COMMISSIONERS OF JACKSON COUNTY v. R. S. CRAFT, ET AL.

1. EVIDENCE—WITNESS.—*Right of cross-examination.* A party to an action has a right to cross-examine a witness of the adverse party upon all matters concerning which the witness has been examined in chief; and it is error for the court, or referee trying the cause, to refuse to allow said party such right.

2. COUNTY TREASURER—*Extent of his liability on his Official Bond.* The board of county commissioners may maintain an action against the county treasurer and his sureties, on the treasurer's official bond, for all moneys which the treasurer has received by virtue of his office, and failed and refused to pay over to his successor in office, or to otherwise account for, whether said moneys belonged to the state, county, township, school district, or other fund. The board of county commissioners are not confined in their action to the county fund alone.

—— The several statutes relating to the treasurer's liability, considered and explained.

*Error from Shawnee District Court.*

R. S. CRAFT was elected treasurer of Jackson county for the term of two years, commencing on the second Monday of January, 1864, and for which he qualified and served. The other defendants, Wayant, Franklin, Smith, Cruzan, and Wheeler, were sureties in Craft's official bond. Craft made settlements as treasurer, with the Board of County Commissioners of Jackson county, July 6th, 1864, and July 20th, 1865, and a final settlement on the 22d of January, 1866; on such final settlement a balance of $53.09 was found in favor of Craft, for which sum

10

a county warrant was issued to him.   In Sept., 1866, the board of commissioners brought suit on his official bond, against Craft and his sureties, to recover moneys alleged to have been received by Craft, as county treasurer, and not paid over or accounted for.   Several defenses were relied upon; first, a general denial; second, the settlements above mentioned, and a final discharge by the board of county commissioners; third, a full and proper payment and accounting for all moneys received by him as treasurer; and fourth, that the funds sued for were not *county* funds, and plaintiffs were not the real parties in interest, and could not maintain an action to recover such funds.   The plaintiffs replied, alleging that "since the making of the said several settlements, the plaintiffs discovered therein sundry errors, false charges, and credits of which plaintiffs were wholly ignorant at the time of making said settlements," which discovery was first made by them on the 15th of August, 1866; that after such discovery plaintiffs had requested Craft to restate his account, and make a full and proper settlement, which he had refused to do.

The action was commenced in Jackson county, whence the venue was changed to Shawnee county.   The case was referred to J. G. for trial of all the issues both of fact and law.   The referee reported in favor of the plaintiffs, that Craft, in his settlement with the board, had not accounted for $767.07 received by him as treasurer, and had charged and retained as fees $162.80 more than he was entitled to by law; that the plaintiffs were at the time, ignorant of the facts, and made said settlement by mistake; "and that said sums, amounting to $929.87, are composed in part of funds belonging to the State, to Jackson county, and to the different townships

and school districts." The referee found as conclusion of law, that the plaintiffs were entitled to recover said sum of $929.87.

A bill of exceptions, settled at the instance of Craft, was filed with the referee's report. From this bill it appears that Jacob Hixon, chairman of the board of county commissioners, was called and testified on behalf of the plaintiffs, and stated that he was present and helped make the settlement with Craft, " and that at the time of making such settlement he (Hixon) supposed the settlement was all right, and correct." Hixon held the "settlement" in his hands, showing the items of debit and credit; and on cross-examination, defendants' counsel, referring to the paper so held by Hixon, and to which the latter had testified as the " settlement" made with Craft, asked this question : " At the time you made this settlement with Craft, did you find a single item that is now embraced in that settlement to be wrong ?"—to which plaintiffs objected, and the referee sustained the objection, and defendants excepted. Other questions were also put to the witness, and excluded by the referee.

Defendants filed exceptions to the report of the referee, and also a motion that said report be set aside and a new trial granted. This motion was heard in the district court, at the May Term, 1868, and was sustained. To the order of the district court setting aside the referee's report, the *plaintiffs* excepted, and bring the case here, assigning said order as error.

*Martin & Burns*, for plaintiffs in error :

1. The action was rightly brought by the plaintiffs; they are the guardians of all the funds that come into the treasurer's hands as treasurer, to see that such funds are properly paid out and accounted for, and they may main-

tain an action against him for any misapplication of such funds. Comp. L. 1862, p. 429, §§ 104, 105; p. 409, § 5; p. 129, § 34; 10 Ohio St., 515.

2. The settlements made with the county board are not conclusive. They may be impeached for fraud or mistake. 18 N. Y., 287; 30 id., 202; 19 Wis., 51; 11 Wheaton, 237.

3. There was no error in excluding the questions put to witness Hixon by the defendants. Such questions were not legitimate cross-examination, and did not tend to elicit proper and competent evidence.

*Otis & Glick*, for defendants in error:

1. The referee erred in allowing the plaintiff to give evidence of sums of money pretended to be due to the State and to the different townships, school districts, etc., as due to plaintiffs. As to these sums, the plaintiffs had no interest; and the suit must be brought by the real party in interest. Code, Comp. Laws, 1862, §§ 32, 34.

Each municipal organization must sue in its own name for money due it. Actions on official securities must be brought by " the party entitled to the benefit of the security in his own name." Code, §§ 578, 579; 10 Ohio St., 515; Nash, 186, 187.

The Auditor of State has authority to sue for, and collect the sum due the State, from delinquent collectors and their securities, with the assistance of the Attorney General. Comp. L., 1862, p. 832, § 31.

The whole tenor of our tax laws is to keep each fund by itself. Comp. L., 1862, chaps. 197, 198; Laws of 1863, ch. 60; Laws of 1864, ch. 37.

2. The referee refused to allow a cross-examination of a witness upon the very points on which he had testified

in chief. 1 Greenl. Ev., §§ 445, 446, 554; 2 Phil. Ev., p. 88, 91, 394, 396; 25 Wend., 651.

The object of the question put to Hixon by defendants was to show that there was no fraud and no mistake in the settlement. Unless fraud or mistake is satisfactorily shown, the record of settlement is conclusive. Wright's Rep., 393, 406.

The opinion of the court was delivered by

VALENTINE, J.: This is a petition in error to reverse an order of the district court of Shawnee county, setting aside the report of the referee. The action was brought by the plaintiffs in error on the official bond of R. S. Craft, Treasurer of Jackson county. The other defendants were the sureties of said Craft. The case was referred; a trial was had before the referee, and during the trial the defendant took a number of exceptions to the ruling of the referee.

1. EVIDENCE, Right to cross-examine witness;

Jacob Hixon, the chairman of the board of commissioners of Jackson county, was called and examined as a witness on the part of the plaintiffs in error. Said Hixon testified, among other things, that he was present and helped to make the final settlement with Craft, and that he then supposed the settlement was all right. The witness, during his examination, held in his hand the record of said settlement, and gave some other testimony relating thereto. On cross-examination, the defendants asked the witness the following questions: "At the time you made this settlement with Mr. Craft did you find a single item that is now embraced in that settlement to be wrong?" "Can you swear now that there are any errors in that settlement?" "Were not all the accounts and charges of Mr. Craft carefully examined by

you at the time of making the final settlement?" "At the time of making the final settlement with Mr. Craft did you not make a careful examination of all his accounts, and find them correct?" Objections were made to these questions by the plaintiffs, and the referee refused to allow them to be answered by the witness.

The testimony of the witness, given on his examination in chief, was probably just what the plaintiffs expected, and possibly just what they desired. The plaintiffs admitted the settlement, but desired to show that there were mistakes in the same; and in order to do this it was necessary to show that the parties making the settlement were, at the time of making the same, ignorant of any errors occurring therein—for if they were not so ignorant, there could not, of course, be any mistake. After the witness had testified concerning said settlement, and given his opinion with reference to the same at the time the settlement was made, the defendants undoubtedly had a right to cross-examine him. They had a right to cross-examine as to the nature and extent of

——Extends to all matters covered by examination in chief.

the examination he gave relative to the different accounts, and the items of each account, and to ascertain fully the opinion he had of each item that was claimed to be erroneous. They had a right to know whether he was really ignorant of the items, as the plaintiffs claimed, and if he was so ignorant, whether he had used the proper diligence to avoid such ignorance. But if the plaintiffs were really mistaken as to the testimony of said witness; if said testimony was really different from what they expected it would be, and was solely in favor of the defendants, still we know of no rule of evidence that would prevent the defendants from a cross-examination of the witness upon such testimony.

But the defendants would, of course, be confined to facts
and circumstances connected with the matters stated in
the examination in chief. The decision of this question
disposes of the whole case, and therefore we do not
think it is necessary to decide the other question raised
in the case, or even to mention those unimportant ques-
tions, which will probably not be raised in the case again.

II. There is one important question, however, which
will undoubtedly be raised again on another trial of the
action, which we will now consider. The
question is, whether the board of county com-
missioners can maintain an action against the
county treasurer and his sureties, on the treasurer's
official bond, for all moneys which the treasurer has re-
ceived by virtue of his office, and failed and refused to
pay over to his successor in office, or to otherwise ac-
count for, whether said moneys belong to the State, county,
township, school district, or other fund; or, whether the
board of county commissioners are confined to the
county fund alone. It is our opinion that the board of
county commissioners are not confined in their action to
the county fund alone, but may sue for all delinquencies.

Craft held his office from January 8th, 1864, to January
9th, 1866. This suit was commenced September 10th,
1866. Hence the following statutes referred to, are the
statutes in force during his term of office, and when this
suit was commenced. The county treasurer's bond is
given to " The Board of County Commissioners," (§ 104,
Comp. L. 1862, p. 428,) in which name counties sue and
are sued; (§ 5, p. 409.) The county treasurer's bond is
intended to cover all the different funds that come into
his hands by virtue of his office; ( § 105, p. 429.)

The code of civil procedure provides that " A person

2. County Treas-
urer liable for
all moneys re-
ceived.

with whom, or in whose name, a contract is made for the benefit of another, may bring an action without joining with him the person for whose benefit it is prosecuted." (§ 34, Comp. L., p. 129.) The treasurer, in his bond, agrees to " render a just and true account of all moneys which shall come into his hands as treasurer, whenever required by the *board of county commissioners*, or by any provision of law." (§ 105, p. 429.) " The county clerk, in keeping the *accounts of his county* with the county treasurer," charges him with all the different funds the treasurer receives, and credits him with all he pays out; (Laws of 1864, p. 70, § 2; Laws of 1863, p. 103, § 16; Comp. L., p. 865, § 31.) The statutes also provide that " The said treasurer shall keep a just and true account of the receipts and expenditures of *all moneys* which shall come into his hands by virtue of his office, in a book or books to be kept by him for that purpose, which books shall be open at all times for the inspection of the *board* of county commissioners, or any member thereof, and to all county and territorial officers; and, at the *annual meeting* in July, of the said *board* of commissioners, or at such other time as *they* may direct, *he shall settle with them his accounts as treasurer*, and for that purpose he shall exhibit to them *all his books and accounts*, and all vouchers relating to the same to be audited and allowed." (Comp. L., p. 430, § 110; Laws of 1864, p. 73, § 10.)

Of course the accounts of each fund must be kept separately, and under §§ 32 and 578 of the code, (Comp. L., 129, and 225,) each township, school district, etc., may sue for delinquencies in its own fund and recover from the treasurer or from the county, or from any person that illegally withholds its funds; but this does not necessarily prevent the county commissioners from suing the treasurer in a case like the one at bar.

For the error of the referee in refusing to allow the witness Hixon to be cross-examined, as to matters upon which he had already been examined in chief, the report of the referee ought to have been set aside; and therefore the decision of the court below is affirmed, and the cause remanded for such further proceedings as may be proper.

All the Justices concurring.