THE BOARD OF COMMISSIONERS OF HARVEY CO. v. GEORGE D. MUNGER, et al.

1. OBLIGEE *in Bond of County Treasurer.* Since the change of the obligee in the bonds of county treasurers by the legislature of 1868, in the general revision of the statutes, from "The Board of County Commissioners" to "The State of Kansas," the case of *Comm'rs of Jackson Co. v. Craft*, 6 Kas. 145, is no longer applicable in regard to instituting and maintaining actions against county treasurers and their sureties on treasurers' official bonds. The board of county commissioners can maintain an action now in its name to recover only the state and county funds. The state, however, may sue for all the delinquencies, and county attorneys have full authority to use the name of the state in their respective counties in actions on such official bonds to restore such delinquencies to the treasury.

2. ———— Unless the official bond of a county treasurer in terms says that it is to have a retroactive effect, it does not cover past delinquencies.

*Error from Harvey District Court.*

ACTION upon the official bond of defendant *Munger*, as county treasurer; and the cause having been remanded by this

court to the court below for further proceedings, the plaintiff, on the 15th day of August, 1879, with leave of the court, filed an amended petition, setting out among other things, that the defendant, *Geo. D. Munger*, was, on the 5th day of November, 1872, elected to the office of county treasurer of Harvey county, Kansas; that he immediately entered upon the performance of the duties of the office; and that, being required so to do, he did, on the 25th day of October, 1873, give an additional bond to the state of Kansas, in the penal sum of $10,000, conditioned as follows:

"The conditions of this obligation are, that whereas, the above-bounden George D. Munger was, on the 5th day of November, 1872, elected to the office of county treasurer of Harvey county: now, if the said George D. Munger shall safely keep all moneys which may be collected or received by him, or which may otherwise come into his hands by virtue of his office, and pay the same over to the proper person or authority, and shall honestly and faithfully discharge and perform all and singular his duties as treasurer according to law during his continuance in office, then this obligation shall be void; otherwise, to remain in full force and effect. This is given as an additional bond."

This bond was signed by himself and the other defendants as sureties. The amended petition also set out that, from the time the defendant *Munger* entered upon the discharge of his duties as treasurer, until the expiration of his term, to wit, till July 7, 1874, there had been paid into the treasury of Harvey county to the defendant *Munger*, as treasurer of said county, state fund to the amount of $9,833.05, county fund to the amount of $21,080.98, township fund to the amount of $4,421,49, railroad bond interest fund to the amount of $5,440,55, sinking fund to the amount of $1,169.93, Marion county bridge fund to the amount of $637.02, district school fund, $11,844.33, school-bond interest fund, $5,241.30, city fund, $2,268.08, and penalty fund, $6,193.67—making in the aggregate the sum of $68,130.40; and that at the expiration of the term of office of said *Munger*, he, the said *Munger*, had in his hands, of the amount so received, $13,708.37;

and that he wholly neglected, failed and refused to pay over to his successor in office, or account for the said sum, to wit, the sum of $13,708.37, for which amount, with interest, the plaintiff prayed judgment. To this amended petition, the defendants filed a motion requiring the plaintiff, among other things, to strike from its said amended petition, as redundant and irrelevant, all allegations of demands against the defendants for other than the state and county funds — that is to say, the motion required the plaintiff to strike from its petition all demands against the defendants, save for the $9,833.05 of state fund, and the $21,080.98 of county fund; and the motion further required the plaintiff to amend its amended petition so as to show how much of said $9,833.05 of state fund had been collected, and how much disbursed prior to the date of the bond sued upon.

This motion was heard at an adjourned term of the court below, on the 22d day of December, 1879, when the court caused the following entry, among others, to be made:

"And the court having heard the argument of counsel, and being fully advised in the premises, does sustain said motion in part, and does order and adjudge that the plaintiff strike from its petition all allegations of demands against the said defendants for other than state and county funds, and that the plaintiff so amend its said petition by stating what amount of money was received by the defendant, Munger, prior to the execution of the bond sued on, and how much of the money so received by said Munger prior to the execution of said bond had been by said defendant Munger disbursed prior to the execution thereof."

To all of which rulings and orders the plaintiff duly excepted, and was given until January 20, 1880, to comply with the order of the court, or make a case for the supreme court. The plaintiff choosing to stand upon its petition, brings the case here to reverse the order of the court below.

*John Reid*, for plaintiff in error.

*Bowman & Bucher*, for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: The bond upon which suit was brought, as shown by the record, was executed Oct. 25th, 1873, by George D. Munger and his sureties, to the state of Kansas, conditioned for the honest and faithful discharge of the official duties of said Munger, as treasurer of Harvey county, in collecting and paying over all moneys, according to law, that should come into his hands by virtue of his office.

The first question presented for our consideration is, whether the board of county commissioners is authorized to maintain an action against the county treasurer and his sureties, on the treasurer's official bond to recover any funds other than those belonging to the county and state?

In the case of *Comm'rs of Jackson Co. v. Craft*, 6 Kas. 145, it was held that the board of county commissioners might sue for all delinquencies. The opinion in that case shows that Craft held his office from January 8th, 1864, to January 9th, 1866; that the suit was commenced September 10th, 1866. At that time, the county treasurer's bond was given to "The Board of County Commissioners," (Comp. Laws 1862, p. 428, § 104,) in which name counties sue and are sued. Within the provisions of § 28 of the code, (then § 34, Comp. Laws 1862, p. 129,) providing that a person with whom, or in whose name, a contract is made for the benefit of another, may bring an action without joining with him the person for whose benefit it is prosecuted, the decision of the *Comm'rs v. Craft*, supra, was indisputably correct. In the general revision of the statutes by the legislature in 1868, for some reason or other it was deemed wise to change the obligee of county treasurers' bonds. Sec. 61, General Statutes of 1868, p. 268, (Comp. Laws 1879, p. 283, § 61,) prescribes that each county treasurer shall, before he enters upon the discharge of his duties, execute to the state of Kansas his official bond. In view of the statutory change in the obligee of bonds of this character, and the absence of any express authority in the statute for the board of county commissioners to sue for

all moneys, whether belonging to the state, county, township, school district, or other fund, we are of the opinion that under § 28 of the code, the action in the court below for the recovery of the alleged defaults and deficits belonging to the various funds received by Munger as county treasurer, cannot be maintained in the name of the board of county commissioners of the county of Harvey. The statute does authorize, however, the action to be brought in the name of the state, the obligee named in the bond, for all such delinquencies.

As the statute (Comp. Laws 1879, p. 959, § 102) makes each county responsible to the state for the full amount of the taxes levied by law for state purposes, the court below properly held that for the recovery of the state and county funds, the board of county commissioners could rightfully maintain the suit; but as no similar provision of law exists as to the other funds mentioned in the amended petition, the allegations concerning township, school district, and like sums, were irrelevant. The conclusion that an action to recover delinquencies on a county treasurer's bond in the name of the board of county commissioners must be confined to the state and county funds, need not tend toward producing a multiplicity of suits, as under the statute the state may sue for all the funds, and all moneys in this way may be restored to the treasury when collected. Then, again, county attorneys are possessed of full authority in such matters, to sue in the name of the state within their respective counties, and therefore can as well prosecute actions to recover the whole of any official delinquency in the name of the state, as in the name of the board of county commissioners. (*The State v. Faulkner*, 20 Kas. 541; *The State v. Comm'rs of Marion Co.*, 21 Kas. 419.) So it cannot be said that the state, counties, cities, towns and school districts must necessarily sue, each for its own portion of the funds, for such delinquency. In this very case, the necessity of prosecuting this proceeding might probably have been avoided, if, instead of standing by the petition, the plaintiff had obtained leave of the court to

14 — 24 KAS.

amend by substituting the state of Kansas as plaintiff. If the counsel of plaintiff believes he has merits in his demand for the recovery of the funds stricken out of the petition, he can yet ask leave to make such amendment. (*City of Atchison v. Twine*, 9 Kas. 350; *Hanlin v. Baxter*, 20 Kas. 134; *Paola Town Co. v. Krutz*, 22 Kas. 725.) Our attention has been particularly called to the case of *Comm'rs of Mower Co. v. Smith*, 22 Minn. 97. We have examined the case carefully, but think that, owing to the provisions of the statutes of Minnesota differing from those of our state, the case is not conclusive against the views herein indicated.

In regard to the second question submitted: We think that the court erred in requiring the plaintiff to amend its petition so as to show how much of the state and county funds had been received and disbursed by Munger before the execution of the bond sued on. It is true that the bond has no retroactive effect, and does not cover past delinquencies. It is likewise true, that the sureties are only liable for moneys in the hands of Munger at the date of the execution of the bond, and for moneys received by him subsequently to the date of the bond, and before the expiration of his term; but the moneys disbursed must be alleged as a defense, and need not be pleaded by the plaintiff. Again, the allegations in the petition are, that at the time of the expiration of the term of office of Munger, as treasurer, he had in his hands of the moneys so collected and received, $13,708.37, and that he neglects and refuses to turn over or account for, to his successor in office, the said sum of $13,708.37, belonging to the treasury of Harvey county, and these allegations are sufficiently definite and certain.

The case will be remanded to the court below, with directions that if no application is made to amend the petition by substituting the state of Kansas as plaintiff, that the order of the court sustaining the motion to strike from the petition all allegations of demands against defendants, for other than state and county funds, be affirmed, and the order of the court

requiring the petition to be amended so as to show how much money was received and disbursed by Munger prior to the execution of the bond be overruled. The costs will, in any event, be divided between the parties.

All the Justices concurring.