## JAMES A. LOPER *et al.* v. THE STATE OF KANSAS.

1. JUDGMENT, *Erroneous.* A judgment for more than the pleadings show the plaintiff is entitled to recover is erroneous.

2. COUNTY TREASURER — *Defalcation* — *Suspension* — *Duty to Deliver Papers.* Where the board of county commissioners of a county, for the preservation and protection of the public funds, suspends a county treasurer from his office, and appoints another person as acting county treasurer, to do and perform all of the duties and assume all the responsibilities of the office, and it appears at the time of such order the county treasurer is a defaulter, such suspension and the appointment of an acting county treasurer is such a removal of the county treasurer from office as requires him, under ¶1703, Gen. Stat. of 1889, to deliver to the acting county treasurer, as his successor, all the books, papers and moneys in his hands by virtue of his office.

3. ——— *Salary.* In such a case, where the acting county treasurer, under the order of the board of county commissioners, continues to discharge all of the duties of the office of county treasurer to the end of the term for which the county treasurer was elected, the county

treasurer is not entitled to his salary after the date of his suspension and the taking possession of the office by the acting treasurer as his successor.

4. ———— *Liability of Sureties.* Where two banks of a county having a population of more than 25,000 inhabitants make, through their officers and directors, the official bond of a county treasurer, with the agreement that such treasurer shall deposit, during his term of office, the moneys in his hands by virtue of his office in about equal proportions in the banks, for their use and benefit, as other deposits, and the board of county commissioners fails to designate, as the statute requires, some responsible bank in the county for the county treasurer to make his deposits, and subsequently the treasurer becomes a defaulter, the sureties upon his official bond, having obtained an advantage or profit by their agreement with the county treasurer, cannot limit or lessen their liability upon the bond because the statute was not complied with by the county commissioners.

*Error from Brown District Court.*

AT the general election held in Atchison county, in this state, in November, 1881, James A. Loper was elected to the office of county treasurer of that county for a period of two years, commencing on the second Tuesday of October, 1882. On the 3d day of October, 1882, he executed his official bond, conditioned according to law, which was signed by himself, and by R. A. Park, A. G. Otis, Julius Kuhn, David Auld, D. C. Newcomb, E. K. Blair, and James W. Parker, as sureties. The bond was duly approved and filed. At the general election of November, 1883, James A. Loper was again elected county treasurer of Atchison county, for the period of two years commencing the second Tuesday of October, 1884. On the 14th day of October, 1884, he made and executed his official bond, which was duly approved. It was signed by himself, and J. M. Linley, A. G. Otis, Julius Kuhn, J. W. Parker, R. A. Park, David Auld, C. G. Foster, and D. C. Newcomb, as sureties. On November 10, 1885, the board of county commissioners of Atchison county caused an investigation to be made of the treasurer's office, and the examiners reported a deficiency existing. Thereupon, the county commissioners, at the instance of the sureties upon the second official bond, which were the same, with one or two exceptions,

as the sureties upon the first official bond, suspended Loper from exercising the duties of the office of county treasurer, and appointed Charles W. Rust, the deputy treasurer, to take charge of the office and the funds thereof. On the 18th of November, 1885, the county commissioners, at the instance of the same sureties upon the official bond of James A. Loper, appointed S. A. Frazier as acting treasurer of Atchison county, with the full salary of treasurer, in absolute charge of the office. After James A. Loper had been suspended and Charles W. Rust appointed to take charge of the office and the funds thereof, he exercised the duties of the office and remained in charge until the appointment of S. A. Frazier as acting county treasurer, and after such appointment Frazier discharged the duties thereof. On the 10th day of August, 1886, an action was commenced in the district court of Atchison county by the state of Kansas, against James A. Loper and his sureties, David Auld, A. G. Otis, D. C. Newcomb, Julius Kuhn, R. A. Park, J. W. Parker, J. M. Linley, and C. G. Foster, to recover for an alleged defalcation of $10,436.99, with interest thereon from November 10, 1885.

On the 19th day of March, 1887, a second amended petition was filed in the case, which, after alleging the election and qualification of James A. Loper as county treasurer for the terms hereinbefore stated, and also the execution and acceptance of his second official bond as such county treasurer, among other things charged that Loper, as county treasurer, received the tax-rolls for 1882 and 1883, together with other large sums of money, aggregating $453,334.78, and was entitled to credit thereon in the sum of $440,891.45, leaving a balance due of $12,443.33 on October 10, 1884, for which judgment was claimed. J. M. Linley and C. G. Foster were omitted as defendants in this petition.

In the second count or cause of action, it was charged that Loper entered upon a second term of office on October 14, 1884, and received the tax-rolls of 1884, amounting to $271,-061.85, and other moneys properly payable and chargeable to him, as such county treasurer, in the sum of $30,072.55; that

an investigation of the treasurer's office was made on November 10, 1885, and a deficiency found in his office, and thereupon that the county commissioners, by due authority, suspended and removed Loper as such treasurer, and that he refused to account for said moneys, in the sum of $12,443.33.

Each count or cause of action claimed the same amount of deficiency, but for different official terms and upon different bonds. The parties made defendants in the second amended petition are the same parties who signed both of the official bonds. A third count or cause of action was contained in the second amended petition to recover $500, but as that count was stricken out with the consent of the plaintiff, no further reference need be made to it.

Separate motions were filed by the defendants to require the plaintiff to make the petition more definite and certain. These were overruled, and thereafter the defendants severally filed answers to the second amended petition, which contained, among other things, admissions that James A. Loper exercised the duties of county treasurer of Atchison county from October 10, 1882, until November 10, 1885; that he was then suspended from the exercise of his duties as county treasurer by order of the county commissioners of Atchison county; that he accounted for and paid over to the several funds entitled to the same the sum of $440,891.45. The answer further alleged, that on the 10th of November, 1885, the county commissioners stated the amount of defalcation of James A. Loper on that date at the sum of $13,448.45; that since that day, and prior to the commencement of this action, he had paid over to S. A. Frazier, acting county treasurer, $4,011.46. The answer also alleged that, after allowing Loper the credits to which he was entitled, the claims of the county commissioners against him amounted to the sum of $11,828.28 only, and that this included erroneous items and charges, which, after being deducted, left a net balance on such account of $6,843.60 only.

The fourth count in the answer alleged that there was no deficiency in the accounts of James A. Loper during his first

term of office, and further stated that he had paid out during that term of office $30,000 in excess of all liabilities. The fifth count alleged that James A. Loper was entitled to the salary of $4,000 a year, and that he had received no part of his salary after October 14, 1885, and asked that this sum be applied upon any deficiency, if any such deficiency existed, in his accounts as county treasurer. The sixth count of the answer alleged that the county commissioners had been negligent in designating a responsible bank in Atchison county for James A. Loper, as treasurer, in which to deposit his official funds; and further alleged, that if any deficiency occurred on account of any moneys coming into his hands as county treasurer, the same was wholly caused by the acts and conduct of the board of county commissioners of Atchison county.

To the answer a reply was filed, containing a general denial of the second, third, fourth, fifth and sixth counts of the answer, and alleging substantially that the official bonds of James A. Loper were executed at the instance of the First National and the Atchison Savings Banks, and that the sureties upon both official bonds were officers and parties interested in those banks, and that James A. Loper agreed with such banks, and the sureties thereon, to deposit the official funds received by him in said banks in equal proportions, as other deposits. The reply also contained the application of the sureties upon the official bonds to have James A. Loper suspended as county treasurer and another party to be appointed as acting treasurer, and the declaration that the county commissioners, in such suspension and removal, acted in accordance with the wishes of the sureties on the official bonds.

The case was taken on change of venue to Brown county, in this state, on May 19, 1888, and, upon the motion of the plaintiff, the case was referred to B. A. Seaver, Esq., an attorney at law, to take the proof therein, and to report to the court his conclusions of fact and law. The defendants objected to and protested against the reference, and excepted thereto. The hearing before the referee commenced on the 3d day of August, 1888, in the court-house at Hiawatha, in Brown county.

The defendants again objected to the reference, and demanded a trial before a jury. This was denied and the referee proceeded with the case. After the referee had made his report to the district judge, judgment was entered thereon against the defendants for $8,586.66, with $1,670.69 as interest, making a total of $10,257.35; $350 were allowed as the referee's fees, and $162 as fees for the stenographer. All of the defendants excepted, and bring the case here.

W. W. & W. F. Guthrie, and Seneca Heath, for plaintiffs in error.

W. T. Bland, county attorney, J. W. Orr, and H. M. Jackson, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The first error complained of is the refusal of the court to require the plaintiff below to make more definite and certain the second amended petition. If there was any error in such refusal, it is wholly immaterial, in view of the subsequent pleadings which were filed. The answer of the defendants below contained as a part thereof a statement of the accounts of James A. Loper, as county treasurer, as shown by the books in the clerk's office of Atchison county of the date of the 17th of May, 1886, embracing over 12 pages. This statement purported to give the items of credits and debits for and against Loper as county treasurer in detail, and also in the aggregate. With this statement in the answer, and with the allegations of the answer concerning the same, the defendants were fully apprised of the specific claims and each item thereof against Loper as county treasurer. The reply to the answer stated the official action of the board of county commissioners of Atchison county on November 10, 1885, and on November 18, of the same year, in suspending James A. Loper as county treasurer, and in appointing, in the first instance, C. W. Rust as acting county treasurer, and in the second instance, of appointing in his place S. A. Frazier as acting county treasurer; therefore, in the reply, the defendants were

35 — 48 KAS.

fully informed of the official action of the county commissioners as to any suspension or removal of Loper as county treasurer.

The next complaint is, that the trial court had no power to make the reference of the case, against the objections of the defendants. It is also urged that the defendants were entitled to a trial by jury. It has been frequently decided by this court that the state constitution entitles a party to a jury trial only in such cases as, prior to the constitution, he had a right to a jury. (*Ross v. Comm'rs of Crawford Co.*, 16 Kas. 411.) Under the provisions of § 292 of the code, a reference was not only proper, but, in a case like this, necessary.

The petition alleged, in the first cause of action, that in 1882 and 1883, Loper, as county treasurer, received tax-rolls and other large sums of money, aggregating $453,334.78, and that he was entitled to credits thereon of $440,891.45. The petition further alleged, as a second cause of action, that Loper received, as treasurer, in 1884, tax-rolls amounting to $271,061.85, and other moneys amounting to $30,072.55, and that of these sums he failed to account for $12,443.33. Then the answer set up an itemized statement, made out by the clerk of Atchison county, of the accounts of James A. Loper, as county treasurer, in detail, during the time he served as county treasurer. The answer contained the further allegation that Loper, during his first term of office, paid out as county treasurer the sum of $30,000 in excess of all moneys received by him. The reply contained a general denial to the new matters alleged in the answers. Upon the pleadings and the issues framed thereby, an examination of mutual accounts was required. In such a case, the court may direct a reference when the parties do not consent.

Further complaint is made that the report of the referee and the judgment rendered thereon are not sustained by the pleadings. It appears that the total claims alleged in the second amended petition, as originally filed, aggregated $754,469.18. The reply did not increase or vary this amount. The referee reported that Loper was entitled to credits aggregating $754,-

142.83; therefore the credits to which Loper was entitled, under the findings of the referee, were $326.35 less than the debts or charges against him, as alleged in the second amended petition. The tax-rolls of 1884, according to the proof, were $6,344.61 less than alleged; therefore, the total charges of $754,469.18 were decreased by the proof before the referee of that amount, thereby making the charges less than the credits. While the case was being heard by the referee, and when it appeared that the credits to which Loper was entitled exceeded the charges against him in the petition, defendants requested the referee to stop the further taking of evidence. Thereupon the plaintiff asked leave of the referee to amend its second count or cause of action by increasing the sum of $30,072.55, alleged to have been received by Loper, as county treasurer, to $40,072.55. The referee refused to stop the hearing or allow the amendment requested, but proceeded with the case. He subsequently made his report to the court, showing the total charges against Loper as county treasurer at $763,351.35, and stating his credits at $754,142.83, leaving a balance of $9,208.52, which balance he reduced by other credits to $8,172.57. When the referee's report was examined by the district court, the court allowed the motion of defendants to change the $30,072.55 charged to Loper to $40,072.55, thereby increasing the claims of the second cause of action $10,000. The court then entered judgment against the defendants, including interest, for $10,257.35.

The amendment of $10,000 allowed by the court did not increase the claims of the petition sufficiently to sustain the findings of the referee and the judgment rendered. The petition, as finally amended, alleged the total claims or charges against Loper at $764,469.18, made up of the following sums: $453,334.78, $271,061.85, $40,072.55. The charge of $271,061.85 for the tax-rolls of 1884 must be reduced, under the findings of the referee, to $264,727.24, being $6,344.61 less than stated in the petition; therefore, this sum must be deducted from $764,469.18, leaving $758,124.57 as the only

charges of the petition established by proof, under the findings of the referee. The total credits allowed by the referee were $754,142.83. If the credits proved be deducted from the charges of the petition as finally amended, the recovery or judgment would be about $4,000; not $8,172.57, as reported by the referee, or $8,586.66, as increased by the court. But if the counts or causes of action of the petition be considered separately, a less favorable showing is made for the plaintiff. So examined and considered, the findings of the referee and judgment cannot be sustained under the allegations of the petition, as amended, and the proofs.

The second count or cause of action in the petition as amended charged Loper as county treasurer with the tax-rolls of 1884, amounting to $271,061.85, and other moneys amounting to $40,072.55, total $311,134.40; but the tax-rolls of 1884 amounted to $264,727.24 only, being $6,344.61 less than stated in the petition. This sum deducted from $311,-134.40 leaves $304,799.79 as the charges in the second cause of action of the petition, construed with the proofs and findings of the referee. The referee reported upon the first count or cause of action in the petition $10.58 only as the deficit, and stated that Loper was entitled to credits during his second term of office for $305,306.65, making his credits nearly $500 in excess of the charges established under the second count or cause of action of the petition; therefore the finding of the referee of $8,161.99, with interest, against Loper, under the second count or cause of action in the petition, is clearly erroneous, if the allegations of the petition and reply, even as amended, are to have force or effect.

It appears from the findings of the referee that, at the close of the first official term of Loper, $42,515.88 were in his hands as county treasurer, which were carried forward to the like funds in his second term, or rather turned over by him from his first term to his second term. This sum should have been alleged in the second count or cause of action of the petition. Out of abundant caution, this sum might have

**1. Judgment, erroneous.** been included in both causes of action.    It is elementary that a plaintiff cannot recover beyond the allegations of his pleadings.

It is urged that the report of the referee and the judgment of the court below may be sustained under the decision in the case of *Comm'rs of Harvey Co. v. Munger,* 24 Kas. 205; but that case does not control, because it appears from the findings of the referee that the amount of deficit for the first term was $10.58 only, and that the credits of the second term exceeded the amount of deficit alleged for that term.    After the referee filed his report, the court might have allowed the pleadings to be amended as now desired, upon such terms as were just and proper, and then ordered another reference, if further proof was necessary.    But the amendment granted by the court did not go far enough.    It did not increase the charges against Loper sufficiently.

It is suggested upon the part of the plaintiff that the report of the referee and the judgment may be sustained upon the answer filed to the second amended petition, which contains the statement of the charges against Loper as county treasurer, made out and certified to by the county clerk.    It is possible, if there were no other answer than that contained in the third defense, which includes this statement, we might, construing the allegations of such defense most strongly against the pleader, uphold the findings of the referee and the judgment rendered, but two difficulties prevent: First, if that defense be considered an admission of the certified statement as correct, then a few items only are in dispute between the parties, and no reference of the case ought to have been made.    Most of these items raise questions of law only.    Second, the fourth defense set forth the payment of $30,000 by Loper as county treasurer, during his first term of office, in excess of any deficit.    When the case was before the referee, all that the defendants below were required to do to entitle them to judgment was, to establish that the credits during the first and second official terms of Loper were in excess of the charges against him.    If it be conceded that the third defense was an

admission of the accounts certified to by the county clerk, there are other allegations in the answer that the balance claimed from Loper was overpaid.

It is suggested upon the part of the plaintiff that this court may pass upon the case as if the amendments which ought to have been made were in fact made before the case went to the referee. (*Mo. V. Rld. Co. v. Caldwell,* 8 Kas. 244; *Hawley v. Histed,* 10 id. 266; *Organ Co. v. Lasley,* 40 id. 521; *Lemon v. Dryden,* 43 id. 477.) We cannot do this, because the defendants objected in every possible way to the insufficient allegations of the petition before the referee and the court. At the very first opportunity they had, they filed a motion asking the petition to be made more definite and certain. This was overruled, and the objections which they commenced at their first appearance in the court below were kept up in all the proceedings of that court, and are vigorously insisted upon again in this court. If the case had been tried by all the parties as if the pleadings had been amended, or if no objection had been taken to the proof of all the charges of the official terms of Loper as county treasurer, we might consider the pleadings as amended to conform to the facts proved; but we cannot do this now. (*Green v. Dunn,* 5 Kas. 254; *Pratt v. Brockett,* 20 id. 201.) If the petition was merely defective, or if the variance in the proof was trivial only, under some of the decisions of this court, we might pass upon the case as if amended. (*K. P. Rly. Co. v. Montelle,* 10 Kas. 119; *Pape v. Capitol Bank,* 20 id. 440; *Bank of Lindsborg v. Hageman,* 31 id. 599; *City of Topeka v. Sherwood,* 39 id. 690; *Grandstaff v. Brown,* 23 id. 176.) But we cannot now change the petition by allowing amendments of $8,000 or $10,000 more than requested of the court below, with no opportunity for either party to present other or further evidence. If the court had allowed the amendments now suggested, the defendants might have asked and obtained a further reference so that additional proof could have been received. On account of the errors referred to, the judgment of the district court must be reversed.

There are various other important questions discussed in

the briefs, and in view of another trial it is deemed advisable to comment upon some of them. It is contended that Loper was only suspended, and therefore was not required by the statute to deliver to either Rust or Frazier the moneys in his hands by virtue of his office; that this action was prematurely brought, because no sufficient demand was made for any balance claimed; and that, as Loper was suspended and not removed, he was entitled to his salary until the end of his term. It is also contended, as the law requires the appointment of a depository in all counties of the population of Atchison and the daily deposit of the treasurer's funds therein, that the sureties of Loper signed his official bonds with this law as a part of the contract, and that the failure of the county commissioners to designate such depository and compel the daily deposit of the treasurer's funds limited or discharged the sureties from liability.

It appears that on November 18, 1885, at the instance of the sureties, the county commissioners, having previously suspended James A. Loper as county treasurer, appointed S. A. Frazier acting county treasurer, "to forthwith take possession of the county treasurer's office, the books, papers, moneys and records thereof, and to do and perform all the duties and assume all the responsibilities of the acting county treasurer during the further suspension of James A. Loper, county treasurer, and until the further order of the board." This order, made with the consent of the parties now complaining, was fully authorized under the provisions of ¶ 1709, Gen. Stat. of 1889. (*The State v. Majors,* 16 Kas. 440.) Instead of using the word "suspension," under the facts disclosed, the order should have been absolute removal. Frazier was appointed the acting county treasurer, and the sureties agreed to become responsible as his bondsmen for all his acts. He was such a successor of Loper that, under ¶ 1703, Gen. Stat. of 1889, he was entitled to have received from him all moneys in his hands by virtue of his office.

Prior to the commencement of this action in the court below, Loper was well acquainted with the proceedings of the

county commissioners, his suspension from office, the appointment of an acting county treasurer, the claims made against him, and at no time has he offered or tendered to his successor in office, or to anyone else, any of the balance alleged to be due; therefore we do not think the action was prematurely brought, or that any defense can be made for him upon the ground that he had not resigned or been removed from office. His suspension, succeeded by the appointment of Frazier in the terms of the order referred to, was in one sense a removal from office—at least such a removal as is embraced in ¶ 1703, Gen. Stat. of 1889. If the county commissioners had suspended Loper as county treasurer temporarily, for the purpose of examining the public funds, and then, if these had been found correct, he had resumed the discharge of his official duties, much that is said in the briefs of defendants about his right to his salary would have force; but the commissioners did not suspend him merely. They appointed Frazier as acting county treasurer, as his successor during such suspension, and such acting county treasurer discharged all the duties of the office to the end of Loper's term. If the county commissioners had made an order of absolute removal, it would not have accomplished broader results in this respect. If, after suspension, it were determined that a county treasurer was not in default, but had been unjustly suspended, he would be entitled to be reinstated; and, of course, entitled to his salary to the end of his term of office. But if, for the preservation and protection of the public funds, a county treasurer is suspended or removed, and it appears upon examination that such suspension or removal is fully justified, the officer, whether suspended or removed, ought not to be entitled to any salary after such suspension.

3. Salary.

If the allegations in the reply are true, that the officers and persons interested in the First National and the Atchison Savings Banks executed the official bonds of Loper as county treasurer, with the agreement that Loper was to deposit the official funds in about equal proportions in the banks for their

use and benefit, as other deposits, or if the sureties, with full notice thereof, permitted this to be done, they cannot limit or lessen their liability by charging or proving the failure of the county commissioners to designate a depository for the public funds. Parties cannot make an arrangement favoring the violation of a statute regulating the duties of a public officer, and, having obtained an advantage or profit thereby, ask that their liability upon the official bond of such officer be lessened or discharged because the statute was not complied with. (*The State v. McCrillus*, 4 Kas. 250; *The State v. Magill*, 4 id. 356; *Clough v. Hart*, 8 id. 487; *Manley v. City of Atchison*, 9 id. 358.)

4. Liability of sureties.

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.