N. FRANKHOUSER, *as Sheriff of Osage County, et al.*, v. W. B. CANNON.

1. ILLEGAL LEVY — *Liability of Sheriff.* Where a deputy sheriff makes a levy upon property not authorized by the writ of execution, the sheriff is also responsible with him for damages.

2. REPLEVIN — *Excessive Damages.* Where a plaintiff in a replevin action demands $50 damages for the detention of the property claimed, and, without any amendment to the petition or pleadings before or after the trial, a judgment is rendered for $75 for the detention, $25 is excessive and erroneous, and the supreme court may order the district court to modify the same in accordance with the prayer of the petition.

*Error from Osage District Court.*

THE opinion states the facts. Judgment for plaintiff, *Cannon*, February 18, 1889. The defendant *Frankhouser*, as sheriff, and another, bring the case to this court.

*Pleasant & Pleasant*, for plaintiffs in error.

*J. H. Stavely*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by W. B. Cannon against N. Frankhouser and J. G. Ellis, to recover the possession of two mares alleged to have been taken on execution as the property of his son, John P. Cannon. The mares were valued at $150, and $50 damages were claimed for the detention thereof. Trial before the court with a jury. A verdict was returned for the plaintiff below for the possession of the property, and $75 were allowed as damages for the detention of the same. Subsequently judgment was rendered thereon, and the defendants below bring the action here for review.

Various errors are alleged concerning the admission, the rejection of evidence and the giving of instructions. We have examined all of the questions presented and discussed in the briefs, but most of the alleged errors are trivial and wholly unimportant. W. B. Cannon claimed the property under a purchase on the 19th of December, 1888. A written bill of sale of 12 horses and colts, from John P. Cannon to W. B. Cannon, was introduced in evidence, of that date. The amount paid for all this property by W. B. Cannon to John P., as testified to by them, was $800. Seventy-five dollars were paid in cash on the 19th of December, 1888. One hundred and eighty-eight dollars were acknowledged received on account of the payment of a security debt. Two hundred and seventy dollars were paid in labor, and $100 for the keeping of two children one year. On the 31st of December, 1888, $167, the balance due on the bill of sale, were settled with property. It is contended that judgment should have been rendered in favor of Frankhouser, upon the ground that there is no evidence connecting him with the wrongful possession of the goods, or with the transaction in any way. The petition alleged that the property in controversy was seized on the 5th day of February, 1889, by N. Frankhouser, sheriff of Osage county, by virtue of an execution issued out of the district court of that county. Upon

the trial, it was admitted by the parties that the property was levied upon by John G. Ellis, acting as deputy sheriff of Osage county. In view of the provisions of § 108 of the civil code, taking all allegations of authority as true unless denied upon oath, and the unverified answer filed in this case, and the admission of the parties, we think it may be fairly said that N. Frankhouser was the sheriff, and that J. G. Ellis made the levy as his deputy sheriff. The sheriff is the real party in interest, as the acts of the deputy sheriff levying an execution bind him. (*McCracken v. Todd*, 1 Kas. 148 ; *Hoisington v. Brakey*, 31 id. 560.) In this case, Frankhouser would not be benefited if he were released from the judgment, as Ellis was deputy sheriff only, and Frankhouser would be responsible for any orders to him. The bill of sale from John P. Cannon to W. B. Cannon, of December 19, 1888, was witnessed by Samuel Snow. Snow testified that after it had "just been written down and John Cannon was going away, it was read over to him and he made his mark ; that the mark upon the bill of sale presented was his mark, and that he could read a little; that he knew his own name when he saw it written." His evidence may not have been of much weight or value, but it was competent. It was sought by defendants below to show by John P. Cannon what he did with the $75 after receiving it. He stated "that he received the money, never returned it to his father, and that he kept it and used it for himself." It is immaterial what he did with the money after receiving it, if it was received in good faith and not in any way used for the benefit of his father. If any action had been commenced against John P. Cannon for the recovery of money before the purchase of the horses and colts by W. B. Cannon, the date of the commencement of such action ought to have been shown by the records of the justice of the peace or the court where the action was commenced.

One or two of the instructions given by the court are entitled to criticism, but there is so little evidence in the case impeaching the purchase of the property by W. B. Cannon

that we do not think the errors in the instructions sufficiently erroneous or misleading to cause any reversal. The amount of damages allowed in the judgment for the detention of the property was $75. The petition asked $50 only; therefore, $25 of the judgment is excessive, and without authority under the pleadings or issues. (*Loper v. The State,* 48 Kas. 540.) The judgment must be modified. The case will be remanded to the court below, with direction to deduct $25 from the judgment heretofore rendered. The residue of the judgment is affirmed. The costs in this court will be divided.

All the Justices concurring.