Larry Welch, Director Kansas Bureau of Investigation 1620 S.W. Tyler Topeka, Kansas 66612-1837
Dear Director Welch:
You request our opinion on an issue involving the respective jurisdiction of federal, state, and local law enforcement agencies at the Parsons, Kansas Army Ammunition Plant (PKAAP), and you seek clarification on what can be done if an incident occurs within the confines of that facility necessitating a request for a local law enforcement response. You note that you have been contacted by the Federal Bureau of Investigation (FBI) concerning what response could be made by Kansas law enforcement officers if an emergency occurred at that site. You inform us that the FBI would ordinarily be the appropriate federal agency to respond in such an emergency, but that the closest FBI offices are quite a distance away. Thus, the FBI is interested in entering into a memorandum of understanding between PKAAP, Parsons Police Department and the Labette County Sheriff's office, with the Kansas Bureau of Investigation (KBI) also assisting if necessary. You state as a given fact that the PKAAP property is indeed subject to federal law enforcement jurisdiction (as a "federal enclave").[1] You also ask about civil liability in such a situation.
We must first examine the scope of authority, and jurisdiction, of the various types of law enforcement officers who may assist in responding to or investigating matters, generally and then within the confines of the PKAAP property.
28 U.S.C. § 531 et seq. and 28 U.S.C. § 33 establish and empower the Federal Bureau of Investigation. The powers of the FBI are also set forth in 18 U.S.C. § 3052, Crimes and Criminal Procedure:
 "The Director, Associate Director, Assistant to the Director, Assistant Directors, inspectors, and agents of the Federal Bureau of Investigation of the Department of Justice may carry firearms, serve warrants and subpoenas issued under the authority of the United States and make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony."[2]
K.S.A. 75-711et seq. establish the Kansas Bureau of Investigation and K.S.A. 75-712(a) provides: "It is the duty of the members of the bureau to make full and complete investigations at the direction of the attorney general. Each member of the bureau shall possess all powers and privileges which are now or may be hereafter given to the sheriffs of Kansas." K.S.A. 19-805 et seq. create and set forth the powers and duties of county sheriffs. K.S.A. 19-813 is the state law that vests sheriffs, undersheriffs and sheriffs' deputies with a duty to maintain public order.[3]
K.S.A. 12-4111 vests law enforcement officers employed by Kansas cities with the power to detain persons, to place them in custody and to arrest them for violation of municipal ordinances. K.S.A. 22-2401 sets forth the circumstances under which a "law enforcement officer" may make an arrest in the State of Kansas. The law enforcement jurisdiction of these various Kansas officers is further defined and limited by the jurisdictional boundaries established in K.S.A. 22-2401a.
K.S.A. 22-2401a provides pertinent guidance as to where and when a KBI agent or county or city law enforcement officer, has jurisdiction:
 "(1) Law enforcement officers employed by consolidated county law enforcement agencies or departments and sheriffs and their deputies may exercise their powers as law enforcement officers:
"(a) Anywhere within their county; and
 "(b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person.
 "(2) Law enforcement officers employed by any city may exercise their powers as law enforcement officers:
 "(a) Anywhere within the city limits of the city employing them and outside of such city when on property owned or under the control of such city; and
 "(b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person. . . ."[4]
Ordinarily, a law enforcement officer is authorized to operate within the territorial boundaries of the public entity employing them. Morrellv. Ingle[5] is cited for the general doctrine that, "[t]he powers of any officer are limited to the territory of which he is an officer. He who affirms the existence of powers beyond such limits must show a grant of such powers; it is not enough to show that there is no express denial of them."[6] A more contemporary case, State v. Shienle,[7] expresses essentially the same principle in holding that a police officer acting within his official capacity cannot make an arrest outside the jurisdiction from which his authority is derived.[8]
K.S.A. 22-2401a grants extra-territorial powers in limited situations. In Attorney General Opinion No. 91-96 we concluded that this statute authorizes an officer to exercise official powers outside normal territorial jurisdiction in three instances: (1) when in fresh pursuit as defined by K.S.A. 22-2401a; (2) if the officer has reason to believe a law was violated within his territorial jurisdiction, the officer may investigate and arrest persons for such violations anywhere in the city where his territory is located if such efforts are made pursuant to appropriate notification of and coordination with local law enforcement agencies; and (3) when a request for his assistance has been made by law enforcement officers from the area for which assistance is requested.[9]
There is no exception to jurisdictional limits in K.S.A. 22-2401a for crimes committed outside of territorial jurisdiction but within the officer's view. The officer cannot exercise law enforcement powers in making a warrantless arrest in this situation.[10] However, if the stop itself is lawful (in fresh pursuit of a traffic offense committed in the officer's jurisdiction), the officer may make a citizen's arrest for a crime (other than a traffic infraction) committed in his view outside his jurisdiction.[11]
K.S.A. 22-2401a(1)(b) and (2)(b) are the provisions of the statute most likely to apply in the situation you present. This authority permits city police and county officers (and thus KBI officers) to extra-territorially act as law enforcement officers when their assistance is requested by law enforcement offices possessing jurisdiction within that territory. The issue thus becomes whether such assistance has been requested by the correct federal authorities and how best to memorialize such a request.[12]
Your second issue concerns civil liability issues. You ask "[w]ould state and local law enforcement officers so called upon to protect the public safety in a crisis situation at the PKAAP be doing so as `law enforcement officers' for legal, employment and civil liability purposes."
The issue of when or if a particular act or officer is within the scope of that officer's employment is first and foremost a fact issue. However, given the above discussion, we believe that the Kansas Tort Claims Act (KTCA)[13] would apply to officers and acts performed in furtherance of the contemplated request and agreement.[14] K.S.A. 75-6116
provides for the defense and payment of liability and defense costs of employee in civil cases. It provides for some immunities and coverage "[i]f an employee of a governmental entity is or could be subject to personal civil liability on account of a noncriminal act or omission which is within the scope of the employee's employment and which allegedly violates the civil rights laws of the United States or of the state of Kansas, the governmental entity. K.S.A. 2000 Supp. 75-6104 states that a governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from the activities listed therein. Whether or not the activity in question falls within those listed is a fact issue.
However, in general and in most situations, we believe that if a local or state law enforcement officer acts within the scope of the officer's duties in accordance with a request for assistance from and an agreement with the proper federal authorities, and does not engage in misconduct,[15] the Kansas Tort Claims Act would cover such actions and officer. On the other hand, if the officer acts outside the scope of such a request and agreement, the KCTA may not provide immunity or coverage.[16]
As to the last part of your second question, we again would need all the facts to determine who employs the officer and whether they would still be considered a federal, state or local law enforcement officer. A request from the FBI for assistance from local law enforcement officers could be pursuant to an arrangement whereby the FBI cross-deputizes and/or takes affirmative steps to control the behaviors of the local law enforcement officers. If such is the case, we believe the officers would be acting in the capacity of federal officers. However, an agreement may also be formulated so that the employer would remain the state or local law enforcement entity employing the officer.
In summary, it is our opinion that K.S.A. 22-2401a authorizes local law enforcement officers to provide law enforcement assistance on federal enclave property when requested to do so by the appropriate federal entity or agency with jurisdiction over the federal property in question.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:jm
[1] Stewart Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596
(1940); Orlovetz v. Day and Zimmerman, Inc., 18 Kan. App. 2d 142
(1993).
[2] See also 18 U.S.C. § 3053 (powers of federal marshals and deputies).
[3] K.S.A. 74-2108 and 75-2113 set forth the scope of authority vested in the Kansas State Highway Patrol. Highway patrol officers are vested with authority pursuant to K.S.A. 74-2108. Capitol area security officers are authorized to act pursuant to K.S.A. 75-4503
and university police officers are empowered by K.S.A. 76-726.
[4] Emphasis added.
[5] 23 Kan. 32 (1879).
[6] Id. at 36. See also Attorney General Opinion No. 96-82. This general principle expressed in Morrell was cited and followed in Torsonv. Baehni, 134 Kan. 186 (1931) and Dunfield v. School District 72 inCoffey County, 138 Kan. 800 (1934).
[7] 218 Kan. 637 (1976).
[8] Shienle was favorably cited in the even more recent case ofState v. Miller, 257 Kan. 844 (1995).
[9] A sheriff may exercise his powers outside his county : (1) when he is in "fresh pursuit" of a person; or (2) when a request for assistance has been made by law enforcement officers from the area for which such assistance is requested. State v. Hennessee, 232 Kan. 807 (1983).
[10] A similar situation was before the Kansas Supreme Court in City ofJunction City v. Riley, 240 Kan. 614 (1987). The defendant in that case did not raise, and the court did not address, the question of whether a warrantless arrest for an offense viewed outside the officer's territorial jurisdiction was lawful.
[11] K.S.A. 22-2403(2). See also State v. Shienle, 218 Kan. 637
(1976); State v. Phoenix, 428 So.2d 262 (Fla. 1982) (law enforcement officers could make "citizen's arrests" even though in uniform and marked police car).
[12] As you have not requested our advice on the issue of cross-deputization or memoranda of understanding, we will not address those issues. However, we note that both may be appropriate in this situation.
[13] K.S.A. 75-6010 et seq.
[14] Subject to the limitations of the Kansas Tort Claims Act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state. Woodruff v. City of Ottawa, 263 Kan. 557 (1997).
[15] There may be some liability if misconduct is committed in the performance of an official act. See Monroe v. Darr, 221 Kan. 281 (1977) (a sheriff may be liable for deputies' warrantless entry into plaintiff's home where there was no probable cause, no exigent circumstances, and plaintiff did not consent to the entry); Libby v. Schmidt, 179 Kan. 683
(1956) (a deputy sheriff held liable for planting evidence and then falsely using this planted evidence as a basis for a criminal complaint against plaintiff); Duran v. Mission Mortuary, 174 Kan. 565 (1953) (a deputy sheriff held liable for driving the sheriff's vehicle in a negligent manner and thereby contributing to an accident); Frankhouserv. Cannon, 50 Kan. 621 (1893) (a sheriff could be liable for his deputy's levy of property not authorized by the writ of execution).
[16] Liability arises only when an officer breaches a specific affirmative duty owed to a particular person. Hendrix v. City of Topeka,231 Kan. 113 (1982); see McAllister Robinson, The Potential CivilLiability of Law Enforcement Officers and Agencies, 67 J.K.B.A. 14, 17 (Sept. 1998).