No. 48,088

JAMES DAVID MONROE, *Appellant,* v. JOHNNY DARR, Sheriff of
Sedgwick County, Kansas, and OHIO CASUALTY INSURANCE COM-
PANY OF HAMILTON, OHIO, *Appellees.*

(559 P. 2d 322)

Opinion filed January 22, 1977.

*David W. Kennedy,* of Wichita, argued the cause, and was on the brief for
the appellant.

*H. E. Jones,* of Hershberger, Patterson and Jones, of Wichita, argued the
cause, and *Stephen Jones,* of the same firm, and *H. W. Fanning,* of Kahrs,
Nelson, Fanning, Hite and Kellogg, of Wichita, were with him on the brief
for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought against a sheriff and his

surety in which plaintiff seeks to recover damages for a violation of his right of privacy. The plaintiff-appellant is James David Monroe who will be referred to in this opinion as plaintiff or Monroe. The defendants-appellees are Johnny Darr, sheriff of Sedgwick county, and his surety, Ohio Casualty Insurance Company. This action arose as the result of a non-consensual entry into Monroe's apartment by sheriff's deputies in February of 1973.

The factual circumstances are not in dispute and are essentially as follows: At approximately 7:50 a. m. on February 8, 1973, an automobile driven by Maurice G. Hackworth was forced off the road by the driver of another vehicle. Hackworth was then assaulted by being hit in the back of the head with a revolver after the assailant discovered that Hackworth did not have any money. Hackworth called the sheriff's office and described his assailant as a white male, approximately 20 years of age, about 6 feet tall, and weighing about 200 pounds, with long brown hair and a long beard. Hackworth first described his assailant's vehicle as a 1960-61 light blue Dodge Lancer with a dented trunk lid and bearing no license tag. At 8:50 a. m. a 1960-61 Plymouth Valiant was observed parked at the Royal Regency apartments in Wichita. Sheriff's deputies arrived at the scene and immediately sought out the apartment manager. The apartment manager was advised of the attempted robbery, the description of the assailant, and the fact that a vehicle in the parking lot of the Royal Regency apartments seemed to match the description of the vehicle used in the attempted robbery. The manager stated that this sounded like the people that lived in the basement apartment downstairs on the right side. The apartment manager then arranged for the maintenance man of the complex to accompany the officers to the apartment. The officers knocked loudly at the apartment door. When no answer was received, the maintenance man at the request of the deputies opened the door with a pass key. As the deputies entered the apartment, sheriff's deputy Maxey carried a shotgun. The plaintiff Monroe was sleeping in his bed at the time and was awakened by the deputy sheriff who was pointing the shotgun at Monroe. The deputy ordered Monroe to remove his hand from underneath the pillow upon which he had been sleeping. According to Monroe the deputy then advised him that he was looking for a black man with a beard. It was undisputed that the police entered the Monroe apartment without the permission of Monroe. The officer immediately decided that Monroe was not involved

in the attempted robbery of Hackworth an hour before. The officers left the Monroe apartment about two minutes after they entered the same. The officers then investigated several other apartments in the building but left when the victim of the attempted robbery arrived and advised them that the vehicle in the parking lot had the dent in the trunk lid on the wrong side and was not his assailant's vehicle.

On February 15, 1973, a week after the occurrence, Monroe filed an action against sheriff Darr and his surety, Ohio Casualty Insurance Company, to recover damages on the sheriff's bond for invasion of his right of privacy. The defendants filed a motion to dismiss the action for failure of the petition to state a claim upon which relief could be granted. The district court sustained the motion and Monroe appealed to this court. We reversed and remanded the case with directions to proceed with trial. (*Monroe v. Darr*, 214 Kan. 426, 520 P. 2d 1197.) In the first appeal we held that a sheriff and his sureties are responsible for acts of the sheriff's deputies performed or committed in discharging their official duties under the provisions of K. S. A. 19-805. We further held that the plaintiff's petition sufficiently stated a claim against the sheriff and his surety for damages for invasion of Monroe's privacy and the assault committed by the sheriff's deputies.

Following reversal of the case a pretrial conference was held by the district judge on April 25, 1975. On April 28, 1975, the action came on for trial before a jury. Prior to the commencement of the trial, counsel for the defendants moved to strike the plaintiff's claim for punitive damages for the reason that there was no evidence of willful or wanton misconduct on the part of the sheriff's deputies so as to justify punitive damages. The court gave the plaintiff no opportunity to present evidence on his claim of punitive damages and on the basis of the pleadings and the pretrial order struck the plaintiff's claim for punitive damages. The case then proceeded to trial. After the plaintiff had presented his evidence and rested, the district court sustained the defendants' motion for a directed verdict and to dismiss the action for the reason that the plaintiff's evidence failed to show that he had sustained any damages and there was an insufficient evidentiary basis for the jury to award plaintiff a judgment for money. The plaintiff Monroe's case was dismissed and he has appealed to this court.

Monroe's first point on the appeal is that the trial court erred in striking his claim for punitive damages before he was afforded

an opportunity to introduce evidence on that issue. The record discloses that in the prayer of his petition plaintiff sought to recover $5,000 exemplary damages in addition to $5,000 actual damages. The plaintiff continued to assert his claim for punitive damages at the pretrial conference. The pretrial order specifically states that a mixed question of law and fact to be determined is whether or not the plaintiff is entitled to recover punitive damages. Plaintiff maintains that it was prejudicial error for the trial court to strike his claim for punitive damages before trial without affording plaintiff an opportunity to prove his claim.

The general rule is that punitive damages may be recovered for an invasion of the right of privacy where the defendant has acted with malice. (62 Am. Jur. 2d, Privacy, § 47; *Santiesteban v. Goodyear Tire & Rubber Co.,* [5th Cir., Fla. 1962] 306 F. 2d 9; *Munden v. Harris,* 153 Mo. App. 652, 134 S. W. 1076; *Hinish v. Meier & F. Co.,* 166 Or. 482, 113 P. 2d 438; *Summit Loans, Inc. v. Pecola,* 265 Md. 43, 288 A. 2d 114.) A plaintiff seeking to recover punitive damages has the burden of proving malice on the part of the defendant. In the present case the trial court prematurely entered its order striking the plaintiff's claim for punitive damages before the plaintiff had an opportunity to introduce evidence on that issue. However, at the trial the plaintiff, in order to show the factual circumstances surrounding the invasion of his apartment by the sheriff's deputies, offered into evidence statements taken from various sheriff's deputies who were involved in the affair. The plaintiff accepted the statements of these officers as true and rested his case upon them. In these statements the sheriff's deputies stated unequivocally that they entered the Monroe apartment because they were in search of an unknown person who might have been involved in the attempted robbery of Maurice Hackworth approximately one hour before. Although the actions of the deputy sheriffs could well be described as overly zealous in invading Monroe's apartment without first obtaining a search warrant, there is nothing contained in the evidence relied upon by Monroe which shows that the sheriff's deputies acted with malice or were chargeable with willful or wanton misconduct. We have held that exemplary or punitive damages are not recoverable from a sheriff unless fraud, malice, oppression or improper motives are shown. (*Winstead, Sheriff, v. Hulme,* 32 Kan. 568, 4 Pac. 994; *Dow, Assignee, v. Julien,* 32 Kan. 576, 4 Pac. 1000.) We have concluded that, although the district court acted prematurely in striking plaintiff's claim

for punitive damages before trial, in view of the fact that the undisputed evidence offered by plaintiff at the trial fails as a matter of law to show malice or improper motive plaintiff was not prejudiced by the ruling of the district court. On the undisputed facts Monroe is not entitled to recover punitive damages from sheriff Darr or his surety. We, therefore, hold that Monroe's first point does not justify a reversal of the case.

Monroe's second point on the appeal is that the trial court erred in directing a verdict in favor of the defendants at the close of the plaintiff's case. The defendants moved to dismiss the case and for a directed verdict for three reasons: (1) Probable cause for entry into the plaintiff's apartment by the sheriff's deputies had been shown; (2) since the sheriff could not discharge the deputies at his pleasure, he was not liable for the deputies' acts; and (3) plaintiff's evidence failed to show that he had sustained any damages. The district court overruled the motion on the first two grounds but held it should be sustained for the reason that proof of damages was remote and speculative and therefore the plaintiff's evidence failed to show that he had sustained any damages.

It was undisputed that the sheriff's deputies physically intruded upon the seclusion of the plaintiff Monroe. Such intrusion, unless justified by the circumstances, would constitute an actionable invasion of Monroe's right of privacy. (Restatement, Second, Torts, § 652B; *Froelich v. Adair,* 213 Kan. 357, 516 P. 2d 993; *Dotson v. McLaughlin,* 216 Kan. 201, 531 P. 2d 1; 56 A. L. R. 3d 434 and cases cited therein.) The elements of damage which may be recovered in an action for the invasion of privacy are stated in Restatement, Second, Torts, § 652H to be as follows:

"§ 652H. *Damages*

"One who has established a cause of action for unreasonable invasion of his privacy is entitled to recover damages for

"(a) The harm to his interest in privacy resulting from the invasion;

"(b) His mental distress proved to have been suffered if it is of a kind which normally results from such an invasion; and

"(c) Special damage of which the invasion is a legal cause." [Tentative draft No. 21.]

An invasion of privacy action is primarily concerned with compensation for injured feelings or mental suffering of the injured party. (*Munsell v. Ideal Food Stores,* 208 Kan. 909, 924, 494 P. 2d 1063.) The gist of the cause of action for invasion of privacy is for direct wrongs of a personal character which result in injury to the plaintiff's feelings. (62 Am. Jur. 2d, Privacy, § 45 and cases cited therein.)

*Kunz v. Allen,* 102 Kan. 883, 172 Pac. 532 (1918), was the first Kansas case to recognize an action for breach of privacy. That case involved a demurrer sustained by the trial court on the ground that plaintiff failed to prove any actual damages from the invasion. This court reversed saying it was not necessary for the plaintiff to prove the amount of her damages in dollars and cents as long as the evidence tended to show the effect of the wrong upon the plaintiff. A similar rule is applied in cases of assault and battery. (*Schaap v. Hayes,* 99 Kan. 36, 160 Pac. 977.) A correct statement of the Kansas law may be found in *Manville v. Borg-Warner Corporation,* (10th Cir., 1969) 418 F. 2d 434. There the court held that although a plaintiff in a privacy suit can recover without proof of special damages and is not required to show general damages in specific amounts, he is required to introduce some evidence to show that he suffered anxiety, embarrassment, or some other form of mental anguish. In the present case the trial court in sustaining the defendants' motion for a directed verdict held that Monroe's evidence was insufficient to show that he had suffered general damages by way of mental distress as a result of the invasion of his privacy. We have concluded that the trial court erred in this regard. Although somewhat skimpy, the evidence was sufficient to submit the issue of general damages to the jury.

At the trial the plaintiff Monroe took the stand and testified that since the incident he could not sleep well at night, that he was more nervous than he was before, that he had feelings of apprehension, and no longer felt safe. Monroe's wife testified that since the incident her husband had become extremely nervous, hears noises at night, has had more attacks of asthma than he had before the incident, has trouble going to sleep, and that he does not trust law enforcement officers any more. She further testified as to his mental distress on the date the incident occurred. It was not necessary for the plaintiff to call medical witnesses to testify as to his condition and to show mental anxiety and suffering. It was not necessary for him to introduce evidence to show the value of his mental distress in dollars and cents. The amount of damages which should be allowed for the plaintiff's mental distress was a question for the determination of the jury. The district court in our judgment erred in taking the case away from the jury and entering judgment in favor of the defendants since the plaintiff introduced evidence showing that he suffered mental distress and

anxiety as a result of the incident. The case must be reversed and remanded to the district court for a new trial.

The defendants in their brief have raised a point which was not briefed or argued by the plaintiff on the appeal. Essentially the defendants contend that the trial court properly directed a verdict in favor of the defendants and dismissed the plaintiff's action because the plaintiff had failed to show any wrongful or tortious act on the part of the sheriff's deputies on which a recovery may be based. The defendants concede that the sheriff's deputies entered the Monroe apartment without first obtaining a warrant. They maintain, however, that under all the circumstances there was probable cause to enter the apartment without first obtaining a warrant. We do not agree. The blue Valiant which was parked in front of the apartment complex had not been identified by the robbery victim as being the automobile of his assailant. All that the police knew was that the robber was driving either a 1960-61 Dodge Lancer or Plymouth Valiant which had a dent somewhere in the trunk lid and a vague identification of the assailant as a white male, with a long beard and long brown hair, about 6 feet tall, and weighing about 200 pounds. In our judgment this information did not justify the sheriff's deputies in entering Monroe's apartment without a warrant. Probable cause alone is not sufficient to justify a warrantless search or entry into a private residence. In addition to probable cause it is necessary for the police officer to show exigent circumstances which make an immediate warrantless search imperative. (*Warden v. Hayden*, 387 U. S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642.) It is true that in some cases circumstances may be present where police officers in hot pursuit of a clearly identified robber are justified in entering a private residence which he has been seen entering, in order to make an arrest. Such a rule is not applicable, however, under the facts and circumstances shown in the present case. The right of the people to be secure in their homes is a basic right guaranteed by the Kansas Constitution in § 15 of the Bill of Rights. Entry into a private home or apartment by police officers constitutes an invasion of the right of privacy of the members of the family residing there and unless justified by legal privilege gives rise to a cause of action for breach of privacy. Under the facts and circumstances shown in this case we find no justification for the entry by the sheriff's deputies into the Monroe apartment without first obtaining a search warrant from a judicial officer.

The defendants further take the position that the sheriff's officers were exercising their discretion in deciding to enter the Monroes' apartment, and assuming there was a violation of Monroe's privacy, there was no wantonness or malice present so as to make them liable. The sheriff and his surety rely upon *Commercial Union Ins. Co. v. City of Wichita,* 217 Kan. 44, 536 P. 2d 54, where we held that a public officer exercising discretion in the performance of his official duties is not liable for resulting injuries in the absence of malice, oppression, wantonness, or willful misconduct. The difficulty with this position is that the acts of the sheriff's deputies in invading the Monroe apartment went beyond the mere exercise of discretion in arriving at an administrative decision. Here the sheriff's deputies committed acts of actual invasion into the seclusion of the plaintiff's home. In the past this court has held a sheriff and his surety liable on the sheriff's bond under K. S. A. 19-805 for intentional or negligent acts of the sheriff's deputies where such acts did not involve malice or wantonness or willful misconduct. Where a deputy sheriff makes a levy upon property not authorized by the writ of execution, the sheriff is responsible with him for damages. (*Frankhouser v. Cannon,* 50 Kan. 621, 32 Pac. 379; *Jones v. Simmons, Sheriff,* 115 Kan. 505, 223 Pac. 284.) In *Pfannenstiel v. Doerfler,* 152 Kan. 479, 105 P. 2d 886, this court held the sheriff and his surety liable under K. S. A. 19-805 where the deputy sheriff in making an arrest under a warrant used excessive force by discharging a tear gas gun into the plaintiff's eyes at close range and thereafter failed to provide needed medical attention. This court rejected the defendant's argument that there could be no recovery since "fraud, deceit, or oppression" were not alleged. In *Duran v. Mission Mortuary,* 174 Kan. 565, 258 P. 2d 241, a sheriff was held responsible for negligent acts of a deputy in driving a patrol car which resulted in personal injuries to the plaintiff.

In the first appeal in this case we held that the plaintiff's petition stated a claim against the sheriff and his surety for damages for invasion of Monroe's privacy and the assault committed by the sheriff's deputies. In view of our prior cases construing K. S. A. 19-805 discussed above and our decision in this same case on the prior appeal, we reject the contention of the defendants that sheriff Darr and his surety may escape liability in this case for invasion of Monroe's right of privacy simply because such invasion was not

committed by the sheriff's deputies with malice, oppression, wantonness, or willful misconduct.

The judgment of the district court is reversed and, for the reasons set forth above, the case is remanded to the district court with directions to grant the plaintiff Monroe a new trial.