ROBERT L. MCCUNE, APPELLANT AND CROSS-APPELLEE, V. ROSE NEITZEL, APPELLEE AND CROSS-APPELLANT.

457 N.W.2d 803

Filed July 13, 1990.    No. 88-552.

Randall T. Smith for appellant.

Robert A. Wichser and Craig W. Feil, of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Plaintiff, Robert L. McCune, appeals a Sarpy County district judge's order denying him the benefit of a $25,350 verdict rendered by a jury in his favor because he had been slandered.

The trial judge found that the damage award was the result of passion and prejudice and ordered a new trial on damages only. Plaintiff appeals that finding and order.

Rose Neitzel, the defendant, has cross-appealed, claiming the trial court erred (1) in failing to properly instruct the jury on slander per se, (2) in an evidentiary ruling, (3) in granting the plaintiff's motion in limine, and (4) in overruling her motions for a directed verdict.

We find that the verdict in favor of the plaintiff should be reinstated and that there is no merit in the defendant's cross-appeal.

In an action at law, this court on appeal views the evidence in the light most favorable to the prevailing party. *State v. Smith,* 231 Neb. 740, 437 N.W.2d 803 (1989). All inferences which may be drawn from the evidence must be drawn in favor of the prevailing party. *Forker Solar, Inc. v. Knoblauch,* 224 Neb. 143, 396 N.W.2d 273 (1986).

Taking the view most favorable to the plaintiff, the record

reflects the following operational facts.

McCune, a single, 27-year-old man, was raised in Springfield, Nebraska, which has a population of 800 inhabitants. Since the age of 15, the plaintiff at various times had been employed in the sprinkler business on a part-time and full-time basis. In March 1986, McCune began employment with a Gretna business owned by his brother. McCune's primary duties consisted of selling residential lawn sprinkler systems and managing the installation crews. The company operated within a 100-mile radius of Gretna.

During July 1987, the defendant's sister, Lois Keyes, was bedridden due to paralysis on her left side caused by a stroke. Patricia J. Dieleman was employed as a certified nurse's aide assigned by her employer to assist Keyes in her home. The plaintiff's mother, Betty Holz, with whom Dieleman shared a common employer, was a home health aide.

On the evening of July 8, 1987, Brenda Wills, Keyes' daughter, informed Keyes and Neitzel that she knew a friend of McCune's who was dying of AIDS. While Neitzel was visiting Keyes at her home the following afternoon, Keyes told Neitzel that she did not want Holz to take care of her because she was told that Holz' son had AIDS. Shortly thereafter, when Dieleman entered the room to attend to Keyes, Keyes, Dieleman, and Neitzel discussed Dieleman's coworkers with whom she was familiar. During the course of the conversation, Neitzel asked Dieleman if she knew the plaintiff's mother. After Dieleman indicated that she knew McCune's mother, Keyes became upset and stated that she did not want Holz in her home. When Dieleman asked why, Neitzel responded, "Didn't you know her son, Bobbie, has AIDS?" Dieleman thereupon asked, "Bobbie McCune has AIDS?" and Neitzel said, "Yes." Neitzel testified that she stated, "Lois said Bobbie McCune was in the hospital with AIDS." McCune was not afflicted with AIDS.

Dieleman testified that she was shocked when Neitzel made the statement to her. After Dieleman stated that she would have to warn somebody, Neitzel replied that she would warn her children if they were associating with a person that had AIDS. Later that same day, Dieleman reported Neitzel's remarks to a

friend of hers and to McCune's mother. Neitzel testified that she spoke of the July 9 events with Keyes' seven daughters, her own husband, her sister, her brother, and her four sons.

The plaintiff testified that after he became aware of Neitzel's statement, he believed that people would regard him differently. McCune avoided Springfield, where he had previously visited his mother and friends at least two times per week. Furthermore, McCune, due to embarrassment, avoided some family gatherings. He testified that one Springfield resident confronted him regarding AIDS.

There was evidence that McCune was a very good employee of his brother's until approximately the third week of July 1987, when his productivity declined dramatically. McCune testified that he was having problems with the workers he supervised because of the rumor that he was suffering from AIDS. McCune's brother informed him near the end of July that the installation crews which the plaintiff managed had lost respect for him due to rumors in the community and that he had to resign or be fired. At that time, McCune resigned his job. The plaintiff eventually left the Springfield area. He was able to find new employment in Ames, Iowa, commencing on April 1, 1988. The job in Ames entailed the same type of work in which the plaintiff was formerly engaged with his brother's company.

For about a month beginning the middle of July 1987, the plaintiff drank continuously. McCune had received alcohol abuse treatment in January 1987 and had remained sober until July 13 or 14. The plaintiff sought professional counseling and attended Alcoholics Anonymous meetings, after which he ceased drinking alcohol. McCune testified that it was a combination of factors in his life, including the AIDS rumors, which caused him to start drinking again. He also suffered from headaches and sleeplessness, was lethargic, and gained weight.

McCune filed a petition on September 24, 1987, alleging that Neitzel had falsely accused him of having AIDS. In her answer, Neitzel denied making any such statements. After trial, the jury returned a verdict in favor of McCune.

Because a resolution of Neitzel's cross-appeal favorable to her would dispose of McCune's appeal, we first address the defendant's cross-appeal.

Neitzel's first assignment of error claims the trial court erred in failing to properly instruct the jury on the law of slander per se. Defendant contends the trial court should have included her proposed instruction that read:

Under Nebraska Law, language is actionable, i.e., slanderous per se, if by its nature and obvious meaning, it falsely imputes to another an existing venereal disease or other loathsome and communicable disease.

In determining whether particular language is defamatory, words complained of cannot be isolated and must be considered in the context of the entire recital or verbal exchange.

Language alleged to be defamatory, must be interpreted in its ordinary and popular sense, rather than in a technical manner.

Although the record reflects that defense counsel gave the judge proposed jury instructions before commencement of the trial, it appears that defense counsel abandoned his proposed instructions. The record reflects that at the instruction conference, defendant's counsel had no objection to any of the judge's proposed instructions. When asked if the defendant had any additional proposed instructions, defense counsel responded, "Not on behalf of the defendant; nothing additional." Absent plain error indicative of a probable miscarriage of justice, failure of counsel to object to jury instructions after they have been submitted for review will preclude raising an objection to those instructions on appeal. See, *Keller v. Noble*, 229 Neb. 542, 428 N.W.2d 170 (1988); *First West Side Bank v. Hiddleston*, 225 Neb. 563, 407 N.W.2d 170 (1987).

Moreover, the trial judge stated that whether a statement amounted to slander per se was a question of law for the court to decide, and therefore, the words "slander per se" should not appear in the instructions. Based upon this trial court ruling and the court's instructions to the jury, it is clear that the trial court inferentially found that Neitzel's statement that McCune had AIDS was slanderous per se as a matter of law and that the statement's meaning was clear and unambiguous. See, generally, *Hennis v. O'Connor*, 223 Neb. 112, 388 N.W.2d 470

(1986). Neitzel does not contest this finding.

Without passing on the precision of the instructions given by the court, we hold that it would have been improper for the court to have included the defendant's slander per se instruction with those given to the jury. Whether a statement is actionable per se is a matter of law for the court. *Hennis v. O'Connor, supra*. In a slander per se action where the statement is clear and unambiguous, the issue the jury is to determine is not whether a statement is defamatory but whether the statement was made by the defendant. *Id*. Given the narrow issue Neitzel raises with regard to the trial court's instructions, the defendant's first assignment of error is meritless.

We next consider Neitzel's second complaint on appeal, that the trial court erred regarding an evidentiary ruling. During cross-examination, McCune denied that a friend of his died from AIDS. The plaintiff insisted his friend died of pneumonia. Neitzel's motion to introduce impeachment testimony on this point was denied. In Neitzel's question-and-answer offer of proof outside the jury's presence, McCune's treating physician testified that plaintiff's medical record stated that McCune told a member of the doctor's nursing staff or a physician that the plaintiff's best friend recently died from AIDS. The defendant contends that the ruling denied her the opportunity to attack McCune's credibility with a prior inconsistent statement. The error was prejudicial, Neitzel maintains, because of the importance of credibility in this case.

If the evidence is otherwise admissible, as a general rule, it is within the trial court's discretion to admit and exclude evidence on the basis of relevancy, and such rulings will be upheld on appeal absent an abuse of discretion. See *State v. Nelson, ante* p. 15, 453 N.W.2d 454 (1990). A witness may not be impeached by producing extrinsic evidence of collateral facts to contradict the first witness' assertions about those facts. A witness' prior inconsistent statement may be used to impeach the witness *only* on matters relevant to and otherwise admissible on some issue in the case tried. *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988). See, also, *Jones v. Tranisi*, 212 Neb. 843, 326 N.W.2d 190 (1982) (stating that it is only as to matters relevant

to some issue involved in the case that a witness can be contradicted for purpose of impeachment).

Applying the foregoing rules to this case, McCune's alleged prior statement does not involve a matter which Neitzel could show independent of McCune's alleged self-contradiction. The fact that McCune may have informed medical personnel that a friend had died from AIDS is irrelevant as to whether McCune was slandered by Neitzel. Thus, the court did not abuse its discretion in excluding the evidence. The assignment of error is meritless.

We next turn to the defendant's contention that the trial court erred in sustaining McCune's motion in limine. In its ruling, the court prohibited Neitzel from inquiring about, or making reference to, the sexual orientation of plaintiff or any other witness. The court also prohibited Neitzel from inquiring about or making reference to McCune's medical records except in regard to the result of a test for AIDS.

The defendant argues that the operative words at issue suggest at least a possibility that an alternative lifestyle was material and relevant to the credibility of the plaintiff and certain witnesses. Because she was prevented from raising these issues on voir dire or during cross-examination, Neitzel contends that she was denied a fair trial.

A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. *State v. Nelson, supra*. It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. *Id*. Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court. *Id*. By the same token, in order to preserve error before the Supreme Court, the party opposing a motion in limine which was granted must make an offer of proof outside the presence of the jury unless the evidence is apparent from the context within which the questions were asked. See, *Frerichs v. Nebraska Harvestore Sys.*, 226 Neb. 220, 410 N.W.2d 487 (1987); Neb. Rev. Stat. § 27-103(1)(b) (Reissue 1989).

Under the facts and circumstances of this case, any error in the trial court's ruling on Neitzel's motion in limine was not

preserved for consideration on appeal. Neitzel's assignment of error in this regard is without merit.

Neitzel's final assignment of error in her cross-appeal contends the trial court erred in failing to sustain her motions for directed verdict at the close of plaintiff's case and again at the close of defendant's case.

In order to sustain a motion for directed verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Bray v. Kate, Inc., ante* p. 315, 454 N.W.2d 698 (1990); *Ginn v. Lamp*, 234 Neb. 198, 450 N.W.2d 388 (1990). In considering the evidence for the purpose of a motion for directed verdict, the party against whom a motion is made is entitled to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence in favor of the party against whom the motion is made, the case may not be decided as a matter of law. *Bray v. Kate, Inc., supra*; *Ginn v. Lamp, supra*.

On a motion for directed verdict or judgment notwithstanding the verdict,

> "the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom."

*Hennis v. O'Connor*, 223 Neb. 112, 116, 388 N.W.2d 470, 474 (1986) (quoting *Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 358 N.W.2d 754 (1984)).

Neitzel attempts to advance numerous evidentiary grounds in support of her contention that the trial court should have granted her motions for directed verdict. Many of the defendant's arguments are not supported by the record. Neitzel's unsupported legal arguments defy fundamental concepts of slander per se.

Defendant first contends that plaintiff was required to prove that her statements were made with malicious intent or ill will. Neitzel is correct that malice in the common-law sense of the term means hate, spite, or ill will toward the person about

whom a statement has been published. See *Turner v. Welliver*, 226 Neb. 275, 411 N.W.2d 298 (1987). However, proof of common-law malice is at issue only when truth or a conditional privilege has been asserted by the declarant. See, *id.*; R. Smolla, Law of Defamation § 1.03 (1990). In the defendant's answer, she did not allege truth or conditional privilege as a defense. Instead, she relied upon denials of McCune's allegations. In this defamation action, truth or conditional privilege must be pled as an affirmative defense. See, *White v. Chicago, Burlington and Quincy Railroad*, 417 F.2d 941 (8th Cir. 1969) (conditional privilege); *Murten v. Garbe*, 93 Neb. 589, 141 N.W. 146 (1913) (truth of the matter charged as defamatory cannot be proved as a complete defense under a general denial); *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 773 P.2d 1231 (1989) (truth). Since Neitzel did not so plead, malice was not at issue in this case.

Neitzel also argues that since McCune failed to present any evidence that other individuals thought any less of him or had a lower opinion of him because of the remarks she made, she was entitled to have her motions for directed verdict granted. In a suit for slander per se, no proof of any actual harm to reputation or any other damage is required for the recovery of either nominal or substantial damages. Prosser and Keeton on the Law of Torts, *Defamation* § 112 at 788 (5th ed. 1984). See, also, *Sheibley v. Nelson*, 84 Neb. 393, 121 N.W. 458 (1909); *Boldt v. Budwig*, 19 Neb. 739, 28 N.W. 280 (1886). "By definition, statements constituting slander per se are unambiguous in their defamatory meaning and do not require proof of extraneous facts." *Hennis v. O'Connor, supra* at 120, 388 N.W.2d at 476.

The defendant further contends that the trial court should have directed a verdict in her favor because the conversation she had with Keyes was private and she did not expect it to be repeated outside the family home. However, one who puts a libel or slander in circulation is liable for any subsequent publications that are the natural consequence of his or her act. *Schmuck v. Hill*, 2 Neb. (Unoff.) 79, 96 N.W. 158 (1901). Similarly, in proving a publication, a plaintiff is not required to show that the slander was made known to the public generally. It is enough that the plaintiff show that it was orally

764

communicated to a single person other than the plaintiff. *Fitzgerald v. Young*, 89 Neb. 693, 132 N.W. 127 (1911). Neitzel also argues that plaintiff presented no evidence showing the rumors originated with or were disseminated by her. The record reflects, however, that Neitzel admittedly told at least one other person that McCune had AIDS. In addition, one who repeats or otherwise republishes defamatory matter is subject to liability as if he or she originally published it. *Stone v. Banner Pub. Corp.*, 677 F. Supp. 242 (D. Vt. 1988); *Jones v. Taibbi*, 400 Mass. 786, 512 N.E.2d 260 (1987); Restatement (Second) of Torts § 578 (1977). See, also, 50 Am. Jur. 2d *Libel and Slander* § 170 (1970).

Viewing all evidence in favor of McCune as true and drawing all reasonable inferences therefrom, the trial court did not err in denying Neitzel's motions for a directed verdict. Neitzel's assignment of error is meritless.

As indicated, the trial court in part granted Neitzel's motion for a new trial. Finding that the $25,350 verdict in favor of McCune was awarded under the influence of passion and prejudice and in disregard of the evidence, the trial court granted a new trial on the issue of damages alone. McCune appeals from that order, claiming that there was sufficient competent evidence to support the jury verdict. In support of this, the plaintiff refers to his lost wages and benefits, physical and mental suffering, and impairment of reputation.

A motion for a new trial is addressed to the discretion of the trial court, and absent an abuse of discretion, the trial court's ruling will be upheld on appeal. *Worth v. Schillereff*, 233 Neb. 628, 447 N.W.2d 480 (1989). A court may vacate a verdict and grant a new trial when it appears that excessive damages have been awarded under the influence of passion or prejudice. See Neb. Rev. Stat. § 25-1142(4) (Reissue 1989).

[A] verdict may be set aside as excessive or inadequate when, and not unless, it is so excessive or inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. If a verdict shocks the conscience, it necessarily follows that the verdict was the result of passion, prejudice, mistake, or some other means not apparent in the record.

*Crewdson v. Burlington Northern RR. Co.*, 234 Neb. 631, 643, 452 N.W.2d 270, 280 (1990). In recognition of the interests involved in a defamation action and the difficulty of proof in this area, this court has declared that in an action for libel or slander, the amount of damages is almost entirely in the jury's discretion. *Hall v. Vakiner*, 124 Neb. 741, 248 N.W. 70 (1933).

In an action for defamation, the damages which may be recovered are (1) general damages for harm to reputation, see, *Hall, supra*, and *Boldt v. Budwig*, 19 Neb. 739, 28 N.W. 280 (1886); (2) special damages, see *Lawrence v. Jewell Companies, Inc.*, 53 Wis. 2d 656, 193 N.W.2d 695 (1972); cf. *Hruby v. Kalina*, 228 Neb. 713, 424 N.W.2d 130 (1988) (explaining that words which are not slanderous per se do not constitute a basis for recovery of damages in the absence of a specific allegation of special damages); (3) damages for mental suffering, see *Hall, supra*; and (4) if none of these are proven, nominal damages, see *Hutchens v. Kuker*, 168 Neb. 451, 96 N.W.2d 228 (1959). See, generally, Restatement (Second) of Torts §§ 620-623 (1977); R. Smolla, Law of Defamation §§ 9.01-.07 (1990).

In reviewing the evidence on damages, an appellate court views the evidence in the light most favorable to the prevailing party, and all controverted facts are resolved in favor of that party. *Hutchens, supra.* Even though in an action where the words are slanderous per se, no evidence need be given of actual damage to the reputation nor of the mental suffering of the plaintiff, *Boldt, supra*, and *White v. Chicago, Burlington and Quincy Railroad*, 417 F.2d 941 (8th Cir. 1969) (applying Nebraska case law on this issue), McCune did present evidence of injury to his reputation and of mental suffering.

McCune testified that after the slander was perpetrated by Neitzel, he noticed that people in Springfield were less friendly and that he "felt like people would look at [him] like [he] was an outcast . . . ." There was evidence that the installation crews which McCune managed lost respect for him due to the rumors circulating in Springfield concerning his affliction with AIDS. A resident of Springfield confronted McCune regarding the statement concerning AIDS. McCune testified that due to the AIDS rumor, he avoided Springfield, where he had previously made visits to his mother and friends on at least two occasions

per week. There was evidence that McCune did not attend some family gatherings because of the situation. The plaintiff testified that he was forced to leave the Springfield area in order to pursue his career.

As indicated, the record further reflects the plaintiff's mental suffering. After McCune became aware of Neitzel's statement, he dwelt on it for weeks, cognizant that Neitzel was very active in the community. Consequently, McCune isolated himself. He suffered from stress, sleeplessness, headaches, lethargy, and weight gain. McCune's therapist testified that the plaintiff felt ostracized by the community, was concerned about the rumors concerning him, and was having a difficult time in facing these problems. Significantly, the Omaha-Springfield area was an area McCune liked very much and was where he was raised, had always lived except when away at college, worked, and wished to remain.

In regard to special damages, there was evidence from which the jury could have concluded that the slander was the proximate cause of McCune's employment being terminated. McCune testified that after he left his brother's employment he actively sought permanent employment and was not able to secure such employment until April 1, 1988, with a firm in Ames, Iowa. While employed with his brother's company, McCune's salary was $20,000 per year plus a commission of 7 percent of his sales. McCune's gross sales in 1987 averaged $18,000 per month. The employment was on a year-round basis. In addition to his salary and commissions, McCune was provided with unlimited use of a business pickup truck valued at $350 per month; gas for the vehicle, which cost approximately $300 per month; motor vehicle insurance at the rate of $750 per year; licensing and taxes on the truck, which amounted to $350 per year; and health insurance. After McCune left his brother's company, his only other income in 1987 amounted to just over $300 for two temporary jobs. His employer at the time of trial was a new company, recently beginning a sprinkler business. The work was seasonal, and McCune received a salary of $1,500 per month for 10 months out of a year. He was not provided with health insurance benefits, nor was McCune paid commissions. At the time of

trial, McCune was still in the probationary period, after which there existed a possibility that he might receive commissions. A vehicle was not furnished to McCune. However, when the plaintiff used his personal van for business purposes, he was reimbursed for gas, taxes, licensing, and insurance.

The damages for lost earnings and commissions for the period that McCune was unemployed alone amount to over $23,000. In addition, McCune's former annual salary of $20,000 per year plus a commission of 7 percent of $216,000 ($18,000 per month times 12 months) was in excess of $35,000. This is far more than McCune's annual salary of $15,000, which he was receiving at the time of trial. See *Bloomfield v. Pinn*, 84 Neb. 472, 121 N.W. 716 (1909) (holding that in a defamation action probable future injury may be taken into consideration in fixing the amount of the damages). To this must be added McCune's lost fringe benefits plus his loss of reputation and mental suffering. In view of the fact that the foregoing evidence more than adequately supports the verdict, we need not consider whether other special harm suffered by the plaintiff was the proximate result of Neitzel's statements.

After reviewing the record, we conclude that the verdict of $25,350 does not shock the judicial conscience and that the verdict was not the result of passion, prejudice, mistake, or some other means not apparent in the record. Thus, the trial court abused its discretion in sustaining the defendant's motion for a new trial on the issue of damages.

The order of the district ordering a new trial on the issue of damages is reversed, and the cause is remanded to the trial court with instructions to reinstate the original verdict.

REVERSED AND REMANDED WITH DIRECTIONS.