SABRINA W., APPELLANT, V. KURTIS WILLMAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF RON WILLMAN, DECEASED, DOING BUSINESS AS HAIR AFFAIR III, APPELLEE.

540 N.W.2d 364

Filed November 21, 1995.   No. A–94–118.

Siegfried H. Brauer III, of Ross, Schroeder, Brauer & Romatzke, for appellant.

O. William VonSeggern, of Grimminger & VonSeggern, for appellee.

· Susan C. Williams, of Murphy, Pederson, Waite & Williams, for amicus curiae Nebraska Federation of Business & Professional Women.

HANNON, IRWIN, and MILLER-LERMAN, Judges.

HANNON, Judge.

This is an invasion of privacy action under Neb. Rev. Stat. § 20-203 (Reissue 1991) brought by the plaintiff, Sabrina W., against Ron Willman, doing business as Hair Affair III. Notwithstanding Willman's admission of liability, the trial court directed a verdict for Willman because the judge concluded plaintiff was required to prove she suffered severe emotional distress as a result of the invasion of privacy in order to recover and found that she failed to do so. Plaintiff appeals. We conclude that a plaintiff need not prove severe emotional distress in order to recover for an invasion of privacy and that the evidence was sufficient for the jury to determine damages, and therefore, we reverse the trial court's judgment and remand the cause for a new trial.

## FACTUAL BACKGROUND

On May 3, 1989, plaintiff brought this action, but it was delayed due to Willman's bankruptcy. The trial was had on January 5 and 6, 1994, and Willman has since died. The case has been revived against his estate. At trial, the parties stipulated that Willman was liable and that the only issue to be tried would be damages. The following facts have been summarized from the record and the stipulation:

During March or early April 1989, plaintiff, who at the time was a 23-year-old single mother, purchased a membership to a tanning facility from Willman, the owner of the Hair Affair III hair salon located in Grand Island, Nebraska. The tanning room in the hair salon had a door which locked from the inside. Willman allowed plaintiff to use the facility before normal business hours, when Willman was the only person operating the facility.

Prior to April 14, 1989, plaintiff used the facility several times. Willman had constructed the tanning room so as to permit him to view any occupant, including plaintiff, without his or her knowledge. Willman secretly watched and photographed her while she was in various stages of undress and nude in the tanning room. Plaintiff never consented to any of Willman's actions, nor was she aware of his voyeuristic desires.

Willman then took the film to a commercial developing facility in Hastings, Nebraska. Upon developing the film, an employee of the facility notified the Hastings Police Department of the nature of these photographs. The Hastings Police Department confiscated the photographs when Willman attempted to take delivery of them. The Hastings Police Department then notified and delivered the pictures to the Grand Island Police Department. Lt. Bradley Brush of the Grand Island Police Department notified plaintiff that she had been photographed by Willman while she was using the tanning facility.

The evidence on damages consists mostly of plaintiff's own testimony. She learned of Willman's actions when she went to the police station at the request of the police to identify herself as the subject of some of the photographs. She testified to the details of her shock upon learning of Willman's conduct and of the photographs. She testified that she was shocked, humiliated, and embarrassed and that she felt degraded by the matter. When Brush showed her the photographs, she cried. She also testified to the details of how some of her family members, friends, fellow workers, and acquaintances treated her after it became known that she was one of the subjects of Willman's conduct. Some of the comments were poor attempts at humor; others were uncharitable or even vicious. Directly or indirectly, the actions of many such people charged or implied that plaintiff had consented or had cooperated with Willman, or at the very least that she was stupid for not having learned what Willman was doing. Men made indecent proposals to her, apparently upon the assumption that the matter indicated her morals were low.

The harassment from other employees at work was sufficiently severe that she asked her employer to call a meeting of the employees to tell them to stop harassing her, but this was ineffective, and eventually she left that employment. She had to have her telephone number changed to avoid obscene telephone calls. Her former husband charged she was unfit to have the custody of her child because of the incident. On several occasions, she overheard people talking about her with reference to the Willman matter. As a result, she felt humiliated and embarrassed and suffered mentally. She started drinking

more to escape her problems. She was afraid to use a public dressing room or stay in a motel room. The incident affected her attitude toward men, her interest in them, and their interest in her. She gained weight.

She found that after the incident she recalled that she was sexually abused as a young child. She became angry at her family members, and she had trouble dealing with her feelings. In 1992, she sought counseling from Robert Bednar, a certified counselor.

Other witnesses also testified about their observations of plaintiff's demeanor after the incident, but since this evidence is in the nature of corroboration it is unnecessary to summarize it in this opinion.

At the conclusion of plaintiff's evidence, the trial court granted the directed verdict, citing the following reasons: (1) Plaintiff failed to show that she suffered severe emotional distress, and (2) the evidence in this case is such that the jury could not determine damages, if any, except by speculation and conjecture.

## ASSIGNMENTS OF ERROR

Plaintiff alleges five errors which can be summarized as the trial court erred in (1) directing a verdict against her and dismissing her cause of action, (2) requiring plaintiff to prove severe emotional distress, (3) refusing to allow certain evidence offered, and (4) granting Willman a change in venue.

## STANDARD OF REVIEW

A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Brown v. Hansen*, 1 Neb. App. 962, 510 N.W.2d 473 (1993). The party against whom the verdict is directed is entitled to have every controverted fact resolved in his or her favor and to have the benefit of all inferences which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the judgment is made, the case may not be decided as a matter of law. *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Clausen v. Columbia Nat. Ins. Co.*, 1 Neb. App. 808, 510 N.W.2d 399 (1993).

## ANALYSIS

*Damages for Invasion of Privacy Under § 20-203.*

█ Willman contends that expert testimony is required and cites the proposition that to be actionable, emotional distress must be so severe that no reasonable person could have been expected to endure it. See *Pick v. Fordyce Co-op Credit Assn.*, 225 Neb. 714, 408 N.W.2d 248 (1987). Furthermore, the emotional anguish or mental harm must be medically diagnosable and must be of sufficient severity that it is medically significant. *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. 266, 498 N.W.2d 522 (1993). See, *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 731, 496 N.W.2d 914 (1993); *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992). Severe emotional damage is an element of intentional infliction of mental distress, *Pick, supra*, and negligent infliction of mental distress, *Sell, supra*, but severe damage is not specified as an element of the cause of action under § 20-203. Conduct which would invade the privacy of an individual will generally be mental and emotional in nature, and if the person whose privacy was invaded could only recover for severe mental distress, the invasion of privacy statutes would provide very little relief.

Furthermore, an examination of the invasion of privacy statutes shows the close relationship of this tort to defamation and not to actions for intentional or negligent infliction of emotional distress. The relationship and nature of the causes of action for invasion of privacy and defamation are particularly spelled out in Neb. Rev. Stat. § 20-209 (Reissue 1991), which provides in significant part: "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication, exhibition, or utterance . . . ." As shown below, we have found that both the Nebraska Supreme Court and other jurisdictions have recognized the relationship of defamation to the action for invasion of privacy.

█ Under our statutory scheme, the tort of invasion of privacy has been divided into three separate causes of action. They are found in Neb. Rev. Stat. §§ 20-202 through 20-205 (Reissue 1991) and generally are (1) exploitation of the plaintiff

for advertising or commercial advantage, (2) trespass or intrusion upon the plaintiff's solitude, and (3) publicity which places the plaintiff in a false light. The present case involves the intrusion claim pursuant to § 20-203. Section 20-203 provides: "Any person, firm, or corporation that trespasses or intrudes upon any natural person in his or her place of solitude or seclusion, if the intrusion would be highly offensive to a reasonable person, shall be liable for invasion of privacy." The statute is silent as to the damages that a plaintiff must prove in order to recover.

In *Kaiser v. Western R/C Flyers*, 239 Neb. 624, 477 N.W.2d 557 (1991), the plaintiffs brought an invasion of privacy action pursuant to § 20-203 against the defendants for flying model airplanes over the plaintiffs' property. The Nebraska Supreme Court looked to the Restatement (Second) of Torts § 652 B (1977), Intrusion upon Seclusion, for guidance, and found § 20-203 similar to the Restatement. The court, relying upon the comments to the Restatement, held that the plaintiffs' action was not the type covered by the statute and stated:

> The illustrations of invasions of privacy accompanying § 652 B encompass such situations as a reporter's entering a hospital room and taking the photograph of a person suffering from a rare disease; "window peeking" or wiretapping by a private detective; obtaining access to a person's bank records pursuant to a forged court order; or the continuance of frequent telephone solicitations.

239 Neb. at 631, 477 N.W.2d at 562. Certainly, the photographing of a woman in the privacy of a tanning booth without her consent falls within this category as well.

In addition to *Kaiser*, both this court and the Supreme Court have referred to the Restatement for guidance in other cases involving other statutory claims for invasion of privacy. See, *Schoneweis v. Dando*, 231 Neb. 180, 435 N.W.2d 666 (1989); *Wadman v. State*, 1 Neb. App. 839, 510 N.W.2d 426 (1993). Therefore, an examination of the Restatement, *supra*, and specifically the section regarding damages for invasion of privacy, § 652 H, is the proper place to begin our analysis. The Restatement, *supra*, § 652 H at 401, states:

> One who has established a cause of action for invasion of his privacy is entitled to recover damages for
>
> (a) the harm to his interest in privacy resulting from the invasion;
>
> (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and
>
> (c) special damage of which the invasion is a legal cause.

Surely, a jury would be entitled to find mental distress would normally result to a woman who was photographed in the privacy of a tanning booth.

Comment *a.* to § 652 H at 401–02 states that "[a] cause of action for invasion of privacy . . . entitles the plaintiff to recover damages for the harm to the particular element of his privacy that is invaded. Thus one who suffers an intrusion upon his solitude or seclusion, under § 652B, may recover damages for the deprivation of his seclusion." Comment *b.* states that a plaintiff may recover for emotional distress or humiliation that he proves to have been actually suffered by him. Comments *b.* and *d.* also state that an action for invasion of privacy closely resembles that for defamation. See, also, *Schoneweis, supra.*

A review of other jurisdictions regarding the intrusion of privacy claim reveals that the gravamen of this tort is "the injury to the feelings of the plaintiff, and the mental anguish and distress caused thereby." *Fernandez v. United Acceptance Corp.,* 125 Ariz. 459, 462, 610 P.2d 461, 464 (Ariz. App. 1980). See, *Monroe v. Darr,* 221 Kan. 281, 559 P.2d 322 (1977); 62A Am. Jur. 2d *Privacy* § 252 (1990) and cases cited therein; 5A Personal Injury, Right of Privacy § 1.03[1][d] (Louis R. Frumer & Melvin I. Friedman, eds., 1994). Generally, other jurisdictions have held that in order for a plaintiff to recover, the plaintiff must prove "an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party that would be highly offensive to the reasonable person." *Turner v. General Adjustment Bureau, Inc.,* 832 P.2d 62, 67 (Utah App. 1992). See, *Snakenberg v. The Hartford,* 299 S.C. 164, 383 S.E.2d 2 (S.C. App. 1989); *Billings v. Atkinson,* 489 S.W.2d 858 (Tex. 1973); *Monroe,*

*supra*; *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 560 N.E.2d 900 (1990); *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269 (1995); 62A Am. Jur. 2d, *supra*, § 38 et seq.; David A. Elder, The Law of Privacy § 2:10 (1991). Certainly, Willman's conduct would be highly offensive to almost anyone that was subject to it.

Once a party has established that the defendant has intruded, the defendant is liable for damages. At least one court has held that if the plaintiff proves liability of the defendant for an intrusion then "the fact of damage is established as a matter of law." *Snakenberg*, 299 S.C. at 172, 383 S.E.2d at 6. Other jurisdictions have either relied upon or expressly adopted the Restatement (Second) of Torts § 652 H (1977) as the proper measure of damages. See, e.g., *Socialist Workers Party v. Attorney General of U.S.*, 642 F. Supp. 1357 (S.D.N.Y. 1986); *Monroe, supra*; *Turner, supra*. Courts have also recognized that damages in this area can be difficult to ascertain or measure by a pecuniary standard, but that this is not a ground for denying recovery. *Turner, supra*; *Fairfield v. American Photocopy Equipment Co.*, 138 Cal. App. 2d 82, 291 P.2d 194 (1955); 62A Am. Jur. 2d, *supra*, § 257, and cases cited therein.

Realizing the difficulty in determining damages, courts have found that a trier of fact is uniquely qualified to assess damages. See, *Snakenberg, supra*; *Turner, supra*; *Fernandez, supra*; *Monroe, supra*. Plaintiffs have collected substantial damages without asserting or proving special damages or physical or other debilitating injury. See *id*.

Consequently, plaintiff can collect general damages for any symptom or side effect caused by the intrusion or resultant emotional distress or suffering or mental anguish—nervousness affecting one's personal and/or professional life; fright and/or shock; any physical discomfort or injury resulted from the emotional distress; headaches; embarrassment; anxiety; sleeplessness; depression; adverse impact on marital or family relationships (including loss of consortium); increased use of alcohol; shame; humiliation; feelings of powerlessness. Furthermore, the courts have applied the general rules of intentional tort liability to intrusion cases. . . .

Plaintiff may also make a claim for reputational injury precipitated by or proximately resulting from the intrusion. For example, where defendant unjustifiably, physically intruded into plaintiff's trailer, a court upheld a damage award based in part on the fact that the "incident became rather public knowledge" throughout a widespread area and became enlarged by rumor and innuendo. . . .

Although special or out–of–pocket damages are not a prerequisite to actionability, the plaintiff may collect for any special damages . . . .

(Citations omitted.) Elder, *supra* at 58–61. See, also, *Gonzales v. Southwestern Bell Tel. Co.*, 555 S.W.2d 219 (Tex. Civ. App. 1977); *Monroe, supra*; *Phillips v. Smalley Maintenance Services*, 435 So. 2d 705 (Ala. 1983); *Miller, supra*; *Love v. Southern Bell Telephone and Telegraph Co.*, 263 So. 2d 460 (La. App. 1972); *Kjerstad v. Ravellette Publications, Inc.*, 517 N.W.2d 419 (S.D. 1994); *Socialist Workers Party, supra*; *Fernandez, supra*.

The Nebraska Supreme Court in *McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803 (1990), has recognized similar difficulties in assessing damage awards in the area of defamation. In *McCune*, the plaintiff appealed a trial court's order that denied the plaintiff the benefit of a jury award of $25,350 after having found that the defendant made slanderous statements that the plaintiff was infected with AIDS. The Supreme Court found that the plaintiff's testimony was evidence of injury to his reputation and of mental suffering and thus reversed the trial court's order for a new trial on the issue of damages and reinstated the verdict. In regard to what damages a plaintiff is entitled to recover, the court stated:

In recognition of the interests involved in a defamation action and the difficulty of proof in this area, this court has declared that in an action for libel or slander, the amount of damages is almost entirely in the jury's discretion. *Hall v. Vakiner,* 124 Neb. 741, 248 N.W. 70 (1933).

In an action for defamation, the damages which may be recovered are (1) general damages for harm to reputation [citations omitted]; (2) special damages [citations omitted];

(3) damages for mental suffering [citation omitted]; and (4) if none of these are proven, nominal damages [citations omitted].

*McCune*, 235 Neb. at 765, 457 N.W.2d at 811.

We note that these damages are very similar to the damages prescribed by the Restatement for an invasion of privacy. See the Restatement, *supra*, § 652 H. We recognize that in Nebraska, plaintiffs are entitled to recover for mental anguish, embarrassment, and humiliation for other causes of action. See, *Duncza v. Gottschalk*, 218 Neb. 879, 359 N.W.2d 813 (1984); *Menhusen v. Dake*, 214 Neb. 450, 334 N.W.2d 435 (1983); *Schmidt v. Richman Gordman, Inc.*, 191 Neb. 345, 215 N.W.2d 105 (1974); *Baylor v. Tyrrell*, 177 Neb. 812, 131 N.W.2d 393 (1964); *Kurpgeweit v. Kirby*, 88 Neb. 72, 129 N.W. 177 (1910).

■ Nebraska also recognizes that nominal damages are awarded, not as compensation for pecuniary loss, but in recognition of a legal wrong where there is no proof of actual damages. *Mathis v. State*, 178 Neb. 701, 135 N.W.2d 17 (1965); *Stewart v. Spade Township*, 157 Neb. 93, 58 N.W.2d 841 (1953); *Larson v. Marsh*, 144 Neb. 644, 14 N.W.2d 189 (1944).

■ Therefore, we conclude that in an action for invasion of privacy pursuant to § 20–203, the damages that a plaintiff may recover are (1) general damages for harm to the plaintiff's interest in privacy which resulted from the invasion; (2) damages for mental suffering; (3) special damages; and (4) if none of these are proven, nominal damages. We also conclude that the amount of damages should almost always be in the hands of the jury.

*Sufficient Evidence of Damages.*

Because the trial was had solely on the issue of damages, the evidence that was adduced related only to the effect that the photographing incident had on plaintiff. Plaintiff was allowed to offer certain evidence regarding her damages, but not allowed to produce other evidence. We have already summarized plaintiff's evidence, and we conclude that it is sufficient to go to the jury.

*Excluded Evidence.*

Plaintiff argues that the trial court erred in not admitting into evidence a sexually explicit magazine which she received anonymously; several newspaper articles which reported the incident, at least one of which specifically mentioned her by name; and plaintiff's testimony regarding an incident that occurred at the Grand Island Post Office. Willman objected on the basis that the newspaper articles and the post office incident were highly prejudicial. The trial court sustained the objections. Willman also objected to the sexually explicit magazine on the basis that "[i]t's highly prejudicial and overweighs the probative value." Plaintiff contends that all of this evidence provides support for her claims of damage to her reputation and of her mental suffering.

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence. *Paro v. Farm & Ranch Fertilizer*, 243 Neb. 390, 499 N.W.2d 535 (1993); *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991); Neb. Rev. Stat. § 27–403 (Reissue 1989). A trial court's ruling concerning § 27–403 will not be disturbed on appeal unless there has been an abuse of discretion. *Paro, supra.*

We conclude that the exclusion of the newspaper articles and the sexually explicit magazine was within the discretion of the trial court. The newspaper articles included references to Willman's bankruptcy, the fact that he had been criminally charged and that the charges had been dismissed, other victims' stories, and the fact that there were other victims. Plaintiff testified about receiving the magazine and the nature of it. Considering the magazine's contents, it would have confused the issues of the case, and we think the court was within its discretion to exclude it.

Plaintiff offered to prove that while in the post office on business she overheard three men talking about the Willman matter. The gist of their conversation, sanitized for decency, was that Willman was having relations with all of the women involved and that some of them became mad and reported him because he was giving more sexual attention to one woman than

the others. This incident is merely one of the many incidents of unkind actions of the public which would tend to increase the suffering of someone who was already humiliated. We think it was prejudicial to exclude this evidence.

*Expert Testimony.*

During trial, Willman filed a motion in limine asking the court to prohibit plaintiff from using the deposition of Bednar, a full–time school guidance counselor and part–time marriage and family counselor. The basis of the motion was that Bednar was not a medical doctor, and in counsel's opinion a medical doctor's testimony was the only relevant evidence on the issue of emotional distress. After examining Bednar's deposition and hearing arguments by the attorneys, the court granted the motion. Later, out of the presence of the jury and by agreement, Bednar's deposition was offered into evidence by plaintiff's attorney and objected to by Willman's attorney for the reasons stated in the motion in limine. In this case, the procedure used was unsatisfactory for the situation.

Bednar's deposition shows him to be a school counselor with the Pleasanton Public Schools since 1980, and before that he had been a teacher and school counselor in the Millard Public Schools. He has a master's degree plus 27 additional graduate hours in counseling. He has engaged in private practice in the field of marriage and family counseling. In 1980, he started counseling as a private business, and he has taken courses related to both his private practice and school counseling. He counsels adults as well as children. Bednar is a board–certified professional counselor in Nebraska. For our purposes, he appears to be a well–qualified professional counselor as that term was defined in Neb. Rev. Stat. § 71–1,266 (Reissue 1990) (since replaced by Neb. Rev. Stat. § 71–1,310 (Cum. Supp. 1994)). He is not certified to practice psychology, and in his deposition he did not claim to do so.

Bednar testified he first interviewed plaintiff in November 1992. He had two more sessions with her in November or December and one more session in April 1993. The information he obtained from plaintiff was essentially the same information that she testified to as summarized above. He testified about the

counseling he had with plaintiff.

The goals of his treatment plan were to reconcile plaintiff with her mother and grandmother and improve her relationship with her current husband and her parenting skills with her child. The treatment plan included dealing with her own anger, feelings of victimization, and paranoia and developing an understanding of why she was suffering since the photographing incident. He felt that treating her was within his capabilities.

In the deposition, plaintiff's counsel also elicited Bednar's opinions on a number of questions in the usual format that attorneys use to present expert testimony. We will merely summarize enough of this testimony to let the reader understand its overall import. Bednar testified that the photographing incident was a significant event of her life, that it triggered emotional traumas and memories and a great deal of anxiety and distress between her parents and herself, and that it triggered her resentment against her mother for not reporting the sexual abuse plaintiff suffered as a child. He also opined that plaintiff suffered adverse effects as a result of the photographing, including paranoia, fear of being alone in a closed room, fear of staying in a motel, nightmares, and difficulty sleeping; that she became withdrawn and cried a lot, but she could still function at work; and that she had repressed the sexual abuse incidents until the photographing incident. Plaintiff's counsel elicited additional opinions from Bednar along the same general approach, but the above should be sufficient to demonstrate the problem.

A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994); *Zarp v. Duff*, 238 Neb. 324, 470 N.W.2d 577 (1991); *Priest v. McConnell*, 219 Neb. 328, 363 N.W.2d 173 (1985). It appears to us that much of Bednar's testimony would be admissible, but many of his opinions are inadmissible, and perhaps some would be admissible in the discretion of the judge. However, the sole objection to his testimony, that Bednar was not a medical doctor, does not raise the question of its admissibility. The rule that only a medical doctor may testify concerning mental

conditions has deteriorated since the early 1960's, and for many years qualified psychologists have been allowed to testify concerning mental conditions. See Annot., Qualification of Nonmedical Psychologist to Testify as to Mental Condition or Competency, 78 A.L.R.2d 919 et seq. (1961), and supplement thereto in 78 A.L.R.2d Later Case Service 919–27 at 407–11 (1986).

We realize that Willman's objection and the court's ruling might have been premised upon the rule contained in cases considering the torts of negligent and intentional infliction of emotional distress, such as the statement "[T]he emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 481, 488 N.W.2d 567, 576 (1992). See, also, *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. 266, 498 N.W.2d 522 (1993); *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 731, 496 N.W.2d 914 (1993). In other sections of this opinion we have concluded that rule does not apply to invasion of privacy cases. However, even if that rule did apply to this case and Bednar's evidence were therefore insufficient to support a verdict, it would still not be inadmissible because it was insufficient.

To go through Bednar's deposition to determine the admissibility of his various opinions without a specific objection would amount to an advisory opinion. This we decline to do. Except to conclude that the objection was improper and should therefore have been overruled, there is nothing for this court to consider. Since this case must be retried, we simply make clear that we have not ruled upon the admissibility of any particular portion of Bednar's deposition.

*Change of Venue.*

The transcript shows that on July 29, 1992, Willman filed a motion for change of venue, and the motion was granted by the court and the trial was changed to another judicial district. Neb. Rev. Stat. § 25–410 (Reissue 1989) provides for a change of venue "[f]or the convenience of the parties and witnesses or in the interest of justice." Plaintiff assigned this action as error, but failed to include the hearing at which the

motion was considered into the bill of exceptions. The motion for change of venue with an affidavit of service is included within the transcript, but when the record of the hearing on the motion is not included within the bill of exceptions we do not know what if any evidence might have been offered on that motion. Even though the law permits the use of affidavits in consideration of motions, the affidavit must be offered and received into evidence for this court to consider such evidence. *Anderson v. Autocrat Corp.*, 194 Neb. 278, 231 N.W.2d 560 (1975). The filing of such affidavits is not sufficient, and the inclusion of the affidavit within the transcript is not sufficient. *Id.*

However, in this case no record was presented for the hearing on the motion for change of venue. "It is incumbent upon the appellant to present a record which supports the errors assigned; absent such a record, the decision of the lower court will generally be affirmed." *Latenser v. Intercessors of the Lamb, Inc.*, 245 Neb. 337, 339, 513 N.W.2d 281, 283 (1994). See, also, *Larsen v. First Bank*, 245 Neb. 950, 515 N.W.2d 804 (1994). Where the record does not show an abuse of discretion, a ruling on a motion to transfer venue will not be disturbed on appeal. *Everlasting Golden Rule Ch. v. Dakota Title*, 230 Neb. 590, 432 N.W.2d 803 (1988); *Bittner v. Miller*, 226 Neb. 206, 410 N.W.2d 478 (1987). Obviously, without a record, this court cannot conclude that the trial court abused its discretion. We therefore find the trial court did not err in granting the change of venue.

## CONCLUSION

Therefore, we conclude that the trial court erred in directing a verdict for Willman, and we reverse the judgment and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.